688 A.2d 1200

**Anna BEDNAR**

v.

**Nancy S. BEDNAR and Susan M. Sutton, Appellants.**

Superior Court of Pennsylvania.

Argued Dec. 12, 1996.

Filed Jan. 14, 1997.

490

Girard J. Mecadon, Pittston, for appellants.

Glenn G. Yanik, Wilkes–Barre, for appellee.

Before McEWEN, President Judge, and CAVANAUGH and TAMILIA, JJ.

TAMILIA, Judge:

Nancy Bednar and Susan Sutton appeal from the June 4, 1996 decree making final a decree nisi entered on May 8, 1996, which confirmed a Master's findings of fact and conclusions of law in this partition action.

Appellants Nancy Bednar and Susan Sutton are the daughter-in-law and granddaughter, respectively, of appellee Anna Bednar. Nancy Bednar was married to Anna Bednar's son, Richard Bednar, who is deceased. Susan Sutton is the offspring of that marriage. On July 16, 1970, Anna, Nancy and Richard Bednar purchased a residence at 48 Hill Street, Swoyerville, Luzerne County, Pennsylvania (hereinafter "the residence"). Nancy and Richard Bednar acquired title to the property as tenants by the entirety and as joint tenants with the right of survivorship as to Anna Bednar. The purchase was subject to a mortgage of $4,500, payable in monthly installments of $49.96 each for a period of ten years. The mortgage was satisfied in 1980. All three purchasers lived at the residence until the death of Richard Bednar on October 20, 1992, at which time Anna and Nancy Bednar each became owners of an undivided one-half interest in the residence. On November 25, 1992, they executed a deed in which each conveyed one-sixth of their interest to Susan Sutton. Thus, upon the transfer, the parties each acquired a one-third undi-

vided interest in the residence as joint tenants with the right of survivorship. In June of 1994, Anna Bednar moved from the residence and on November 23, 1994, she filed the instant action against appellants seeking partition of the residence. Appellants counterclaimed seeking a money judgment against appellee in the amount of $52,454.82 for amounts allegedly owed by appellee for various expenses, including mortgage, insurance, tax, maintenance and utility payments. Appellee filed a reply to the counterclaim in which she denied any outstanding debts and also raised the statute of limitations in defense. By Order dated July 11, 1995, the court directed partition of the property consistent with its finding that each party retained a one-third undivided interest in the residence. On October 5, 1995, a Master's hearing was conducted to determine the value of the property and any credits owed by appellee to appellants. The parties stipulated that the residence had a fair market value of $50,000. On December 20, 1995, the Master issued findings of fact and conclusions of law, as well as a proposed decree. Based on appellants' exceptions to a private sale, the Master awarded the residence to appellants, subject to payment of appellee's one-third interest, which was valued at $16,667. The Master also found, *inter alia*, that appellants were entitled to credits from appellee totaling $1,098.92. Specifically, the Master determined that appellants were entitled to $744 as appellee's share of a replaced heating system, $488.25 as appellee's share of insurance premiums paid from 1989 through 1995, and $66.67 as appellee's outstanding share of survey costs. The award to appellee, as reduced by these credits, totalled $15,368.98. The decree of June 4, 1996 made final the decree nisi of May 8, 1996, and this appeal followed.

Appellants claim the Master, and thus the court, erred in determining the amount of credit they received against the monetary award to appellee.[1] Specifically, appel-

---

1. We note at the outset that the Master was presented with extremely contradictory testimony as to whether, and to what extent, appellee reimbursed appellants for costs between 1970 and 1994. For instance, appellee claimed that she made payments to appellant Bednar of

lants take issue with the Master's findings as to property taxes and improvements to the residence. First, they claim they should have received credit for the amount of property taxes they paid on behalf of appellee. The Master found "that the claim for taxes by a co-tenant cannot be sustained in this case. This matter is governed by *Lohr's Estate*, 132 Pa.Super. 125, 200 A. 135 (1938) and defendants cannot claim reimbursement for taxes paid voluntarily on behalf of the co-tenant." (Findings of Fact and Conclusions of Law, 10/6/95, p. 2.)

*Lohr's Estate* involved a partition action in which appellant sought contribution for the amount of real estate taxes paid on behalf of his co-tenants. In rejecting appellants' claim, our Court held:

"To entitle one to contribution, the payment must be compulsory in the sense that the party paying was under legal obligation to pay." 13 C.J. p. 823, § 6b. See *Finlay v. Stewart*, 56 Pa. 183.

. . . . .

[Instantly,] [a]ppellant was a volunteer, and contribution was not available to him under the facts in this case.

The purposes asserted by appellant do not suffice to remove him from his status of volunteer. " 'The action for contribution is founded upon the equity arising from the payment by the plaintiff of more than his share of a liability existing at the time against both. Where the plaintiff is not liable for the debt, he has no right to volunteer a payment for the purpose of making the defendant his debtor. And

between $34 and $140 every month from 1970 until 1994 (N.T., 10/6/95, p. 12), and that she paid more than her share of expenses (N.T. at 16–17). On the other hand, appellant Bednar testified that appellee paid her only "around $100" in the twenty-four years appellee lived in the residence (N.T. at 130). Of course, had the Master found appellants' testimony incredible, or appellee's testimony credible, appellants' contribution claim could have been rejected on that basis, and this appeal would involve only the propriety of the Master's credibility determination. However, due to his resolution of the issues on other grounds, the Master did not resolve the conflicting testimony as to whether appellee paid her proportionate share of all expenses at issue in this litigation. Accordingly, in adjudicating this appeal, we must assume appellee did not pay her share of expenses.

where the defendant is not bound for it, the payment confers no benefit upon him. He is therefore under no obligation to reimburse the plaintiff': *Wheatfield Tp. v. Brush Valley Tp.*, 25 Pa. 112." *McQuaid et al. v. Sturgeon et al.*, 77 Pa.Super. 441, at page 447.

*Id.* at 128–129, 200 A. at 136.

Although appellants recognize that *Lohr's Estate* bars contribution for the voluntary payment of taxes, they direct our attention to the principle, which *Lohr's Estate* recognized, that where a co-tenant is compelled by law to pay the full portion of the taxes on a tenancy, that co-tenant is able to seek contribution for the proportional amount of the taxes that the other co-tenant fails to pay. *See Lohr's Estate, supra* at 127–130, 200 A. at 136. Appellants argue the mortgage on the instant residence required the payment of property taxes and appellee at no time contributed to these taxes. Thus, according to appellants, "[b]ecause of the payment obligation that arose under the mortgage, it should have been determined in light of the decision in *In re Lohr's Estate* that the appellants were legally compelled by the mortgage's terms to pay the property taxes. As a result, the appellants should be entitled to a credit toward the amount required to purchase Anna Bednar's one-third (1/3) undivided interest." (Appellant's brief at 16.)

Initially, our review indicates that appellants were under no legal obligation to pay appellee's proportionate share of property taxes. In fact, our statutory law has expressly abrogated such an obligation. 72 P.S. § 5511.12 provides:

**§ 5511.12. Payment of taxes by joint-tenants, etc.**

Any joint tenant, tenant in common, or coparcener of real property shall have the right to pay his proportionate part of the amount of taxes due thereon. It shall be the duty of the tax collector to receive and receipt for the same. The interest of any such joint tenant, tenant in common, or coparcener, shall not be affected by any proceeding or sale to enforce payment of taxes on the other interests in said land.

■ In light of section 5511.12, it becomes evidence that a co-tenant who assumes the tax obligations of his fellow tenant does so as a volunteer. As noted, *Lohr's Estate* stands for the proposition that such a volunteer is not entitled to contribution. *See Gallagher, Magner & Solomento, Inc. v. Aetna C. & S. Co.*, 214 Pa.Super. 233, 252 A.2d 206 (1969) (recognizing that *Lohr's Estate* "held that a tenant in common who paid more than his proportionate share of the real estate taxes charged against the land held in common, is not entitled to contribution from his co-tenants in common for his excess tax payments. Even though payment of the taxes was predicated upon an attempt to prevent the land from being divided, plaintiff was deemed a volunteer without standing to sue for reimbursement."); and *Gaul v. McLaughlin*, 207 Pa.Super. 434, 217 A.2d 757 (1966) (*citing Lohr's Estate*, "it is well established that volunteers have no right to reimbursement").

■ Further, even assuming, without deciding, that the mortgage somehow converted the voluntary payment of a co-tenant's proportionate share of property taxes into a legal obligation, it is clear that appellants are not entitled to contribution. This is so because the mortgage on the subject residence was satisfied in 1980, and actions for contribution in a partition suit are subject to a six-year statute of limitations. *See Lohr's Estate, supra* at 126–127, 200 A. at 135. Therefore, any contribution claim by appellants for property taxes paid prior to 1980, even assuming appellants were under a legal obligation to pay those taxes, would be time-barred. In fact, as the Master found, the statute of limitations would bar any contribution claim relating to tax payments prior to 1989, because appellants' counterclaim was not filed until January 13, 1995. Since any taxes paid after 1980 were done so, as we have found, voluntarily, it follows that appellants are not entitled to contribution for real estate taxes paid either before or after 1980. Accordingly, the Master's refusal to credit appellants with property tax payments made on behalf of appellee was correct.

■ Appellants also claim the Master erred in failing to award credit for improvements to the residence made by appellants. According to appellants, "[t]he improvements made to the property included the remodeling of a bathroom over the course of years, placing new aluminum siding onto the house, the addition of a closed-in porch and deck, and the continuous improvement of the surrounding landscape." (Appellant's brief at 17.)

■ Initially, we note that appellants' answer to appellee's partition complaint contained a counterclaim for "the required payments for mortgage, insurance, taxes, maintenance and utilities to maintain [appellee's] share in the property in question." (Appellant's Answer and Counterclaim, p. 2.) Absent from this counterclaim is any demand for improvements to the residence. Our courts have long held that the issues to be raised in a partition proceeding are limited to and circumscribed by the contents of the pleadings. *See e.g. Hoog v. Diehl,* 134 Pa.Super. 14, 19, 3 A.2d 187, 189 (1938) ("The bill and answer circumscribed the issues, and neither court nor Master could enlarge them."); *see also,* 68 C.J.S. Partition, § 3150(b)(1) ("[A] tenant in common who in a partition suit seeks equitable compensation for improvements on the common property must specifically plead his claim.... The issues are confined to those raised by the pleadings, and only such evidence is admissible as goes to prove the affirmative or negative of an issue thus raised.") (footnotes omitted).[2] Thus, there is a significant question of waiver as to appellants' claim for improvements.

■ Nonetheless, because the Master addressed this issue, we will consider his findings, as well as the specific

---

**2.** The rule contains an exception to the specific pleading requirement "where permanent improvements are treated by the parties in their testimony as being improvements for which one of the cotenants is entitled to equitable compensation[.]" *Id.* Instantly, appellee vigorously contested that appellants were entitled to compensation for the improvements and, in fact, claimed that she had paid appellant Bednar all the money she demanded (N.T. at 16). Since the parties did not treat the improvements as ones "for which [appellants are] entitled to equitable compensation" the exception does not apply and appellants were required to plead their claim for improvements.

claims raised in appellants' brief. "As a general rule, where a cotenant places improvements on the common property, equity will take this fact into consideration on partition and will in some way compensate him for such improvements, provided they are made in good faith and are of a necessary and substantial nature, materially enhancing the value of the common property." 68 C.J.S. Partition, § 139(a), *see also Weiskircher v. Connelly*, 248 Pa. 327, 93 A. 1068 (1915) (contribution allowed in partition action where "it was *necessary* to remodel, improve and alter the building erected upon the land so conveyed to [the parties].");  and *Appeal of Kelsey*, 113 Pa. 119, 125, 5 A. 447, 449 (1886) ("[A] tenant in common is liable to his co-tenant for repairs *absolutely necessary* [.] )  (emphasis added). The Master also recognized this principle and found that credits can be claimed only for those improvements "that may be necessary to preserve and protect the integrity of the existing premises for the common benefit of all the co-tenants." (Findings of Fact and Conclusions of Law at 3.) Thus, as a threshold matter, the improvements for which appellants seek credit must have been "necessary" to preserve or safeguard the residence. Appellants provide no authority for their claim that remodeling a bathroom, placing aluminum siding on a house, erecting a sun porch or landscaping are "necessary" improvements within the meaning of our law. In the absence of such authority, we are unwilling to find that these enhancements, which appear to be essentially cosmetic in nature, constitute "necessary" improvements. Thus, appellants' claim fails.

Moreover, even assuming the improvements were "necessary", appellants' claim suffers from other serious defects. Initially, as noted, "an action for partition must be brought within the statutory period of limitations." 68 C.J.S. Partition, § 71. Of course, a counterclaim seeking contribution is subject to the same rule. *See Harmer v. Hulsey*, 321 Pa.Super. 11, 13–15, 467 A.2d 867, 869 (1983) (counterclaim seeking affirmative relief is subject to statute of limitations); and 54 C.J.S. Limitations of Actions, § 38 ("the statute of limitations may be pleaded to a set-off [or] counterclaim"). In

498

rejecting appellants' claims for improvements, the Master found:

> The statute of limitations raised as a defense against the counterclaim (42 Pa.C.S. 5527(6)) bars any claims prior to January 13, 1989.
>
> .     .     .     .     .
>
> Also, it would bar claims for necessary maintenance prior to 1989. Unfortunately, no where in the record are specific dates of any interior repairs mentioned and therefore the Master cannot conclude that any [were] made subsequent to January 1989. Since it would be the defendant's burden to prove their counterclaim, the Master must deny the claims for interior improvements and exterior improvements to the extent the record is silent on the dates the same may have been made.

Findings of Fact and Conclusions of Law, p. 3. In light of this finding, we would expect appellants' brief to set forth at least approximate dates on which the improvements allegedly were made. Unfortunately, appellants' brief is completely silent on this point. Accordingly, as noted by the Master, appellants have failed to allege facts sufficient to overcome the statute of limitations defense asserted by appellee and their counterclaim for improvements properly was rejected on this basis as well.

The Master also found that appellants had failed to provide any evidence concerning the degree to which the improvements enhanced the property value. Similarly, in their brief, appellants note only that the property value increased from its purchase price of $5,500 in 1970 to its stipulated value of $50,000 in 1995. While we agree with appellants that some of this value may be attributable to the improvements at issue, appellants' offer is simply too speculative to provide any reasonable basis for a credit against appellee's share of the residence. *See In re Huffman's Estate,* 349 Pa. 18, 21, 36 A.2d 638, 639 (1944) ("Without evidence on which the auditor could make a finding that the value of the

property was enhanced by this expenditure [for a water supply system], it was properly disallowed.").

Finally, we must keep in mind that this partition action is equitable in nature. *Lohr's Estate, Kelsey, supra.* In this regard, it is important to note that on November 25, 1992, appellee conveyed a portion of her undivided interest in the residence to appellant Sutton for no consideration. Had it not been for that conveyance, appellee would still retain a one-half undivided interest in the real estate. Assuming the $50,000 market value of the residence stipulated to by the parties, the one-sixth interest conveyed by appellee to appellant Sutton has a current value of more than $8,000. Thus, considering all of the facts presented, we are unable to find that an inequitable result was reached below.

Based on the foregoing, we find no error in the findings of fact and conclusions of law issued by the Master on December 20, 1995. Accordingly, we conclude that the decree of June 4, 1996, which ultimately confirmed the report of the Master, was not an abuse of discretion.

Decree affirmed.