J-A01038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SUZANNE I. WARD, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL S. ARNOLD, | |
| Appellant | No. 705 WDA 2014 |

Appeal from the Judgment entered April 15, 2014,
in the Court of Common Pleas of Erie County,
Civil Division, at No(s): 2010-11015

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED JANUARY 21, 2015**

Michael S. Arnold, ("Appellant"), appeals from the judgment entered in favor of Suzanne I. Ward, ("Ward"), following the partition of a home which Appellant and Ward previously owned as tenants in common.  We affirm.

On September 17, 2013, this matter was heard before Master Thomas S. Kubinski, Esquire, ("Master Kubinski").  On November 20, 2013, Master Kubinski issued a report containing findings of fact, conclusions of law, and recommendations to the trial court.  ***See generally*** Master's Report, 11/20/13.  On January 15, 2014, the trial court adopted the Master's Report. ***See*** Order, 1/15/14, at 1.

The Master's Report detailed the factual and procedural background relative to this action:

> The Property [located at 606 Pasadena Drive, Erie, Pennsylvania] was purchase[d] by the parties on December 3,

2003 for the sum of $140,000.00. The value of The Property at the time of sale to [Ward] was $167,000.00. The parties were jointly liable for the liens that existed against The Property at the time of the sale, which totaled $106,002.00. The Property was conveyed to [Ward] on February 8, 2012 pursuant to court order. The net equity was $61,000.00. [Appellant] was excluded from The Property by order of the Honorable Elizabeth Kelly on August 18, 2011.

The parties first lived together continuously in the mid 1990s in a home purchased by [Ward] in Girard, Ohio. The real estate was titled in [Ward's] name and encumbered by mortgage in [Ward's] name as well as a home equity line of credit in the name of both of the parties. The parties then purchased a property in Dayton, Ohio, known as the Galloway property which was titled in [Ward's] name with a mortgage in [Ward's] name. The parties then purchased another property in Dayton, Ohio, known as the Fairborn home on Warmsprings Drive, titled in both parties' names and encumbered by a mortgage in both parties' names. This property is presently subject to a partition action in the state of Ohio. During the time that the parties resided together, they actively rented the three Ohio properties referenced hereinabove.

The parties purchased The Property at 606 Pasadena Drive, Erie, Pennsylvania on December 3, 2003 for the sum of $140,000.00. The grantee clause in the deed to the 606 Pasadena Drive property had a handwritten notation after [Ward's] name, near [Appellant's] name that stated "her husband". The parties resided together at The Property until August 1[8], 2011 when [Appellant] was excluded from The Property by court order. [Ward] continues to live at The Property up until this day.

The parties had two children born to them while residing in the state of Ohio: Joseph, [], and Steven, []. In approximately 1996 the parties held a purported wedding ceremony for family and friends, but had not obtained a marriage license. The marriage ceremony was arranged because the parties did not intend to have a legal marriage, but wanted to maintain the health insurance coverage that they held at the time which would have been forfeited if they were legally married. The parties at some time both believed that there was a common law marriage between them. The parties filed joint federal and state income tax returns as a married couple. However, after [Ward]

- 2 -

discovered that the couple was not married, she amended the 2006 through 2009 joint federal and state income tax returns.

In 2006, the parties began to have relationship problems to the point that [Ward] requested [Appellant] to leave the home. The Honorable Ernest DiSantis of the Erie County Court of Common Pleas granted an order of court dated April 13, 2009 ruling that the parties were not common law husband and wife, nor were they husband and wife as a matter of law. The action was filed at Erie County No. 14896-2008. The parties continued to reside together against the wishes of [Ward] until August 18, 2011, when [Appellant] was excluded from the home.

[Ward] filed an action in partition against [Appellant] for The Property at 606 Pasadena Drive on March 8, 2010. Attorney Thomas S. Kubinski was appointed Master by order of court dated March 18, 2011. On September 20, 2011, the parties entered into an agreement that The Property would be sold to [Ward] for the sum of $167,000.00, contingent upon [Ward] obtaining financing approved within 60 days of the signing of the agreement. On November 15, 2011, the Master filed a Petition to Sell Real Estate to [Ward] under the terms and conditions of the consent agreement. The only contingency in the order at the time was that [Ward] obtain financing to complete the purchase. The order was signed by Judge Garhart. [Ward] obtained a notice of approval of financing from Marquette Savings Bank on November 17, 2011.

Upon obtaining commitment from Marquette, the Master notified [Appellant] on December 1, 2011 that the mortgage approval was obtained and a closing was being scheduled. The Master also notified [Appellant] that he would need to make arrangements soon to sign the closing documents. The Master informed [Appellant] that once he received the signed closing documents back from [Appellant], he would hold them in escrow until the date of the closing, which the Master anticipated would take place on December 15th or 16, 2011. [Appellant] responded to the Master's email communications in early December, asking that the closing documents be forwarded to his brother-in-law (an attorney) who would explain them to him. The Master sent the closing documents which consisted of a deed and an affidavit for [Appellant] to sign to the effect that he was not a "Michael Arnold" who is subject to two liens in Erie County, Pennsylvania for criminal convictions. The Master

requested that [Appellant] execute the documents and return them to him no later than December 12, 2011.

[Appellant] thereafter sent objections to the Master via email on the bases that there was no HUD or loan statements included in the documents, that the deed sent to him for signature was "not a deed" and that [Ward] was untruthful and that the financing really was not lined up because "a line of credit for the entire amount of both mortgages would be very unusual financing". [Appellant] also asked about a credit report and stated that he needed more details before he would sign a deed. He was also angry that his name was the subject of a title search in Erie County without his permission.

As a result of [Appellant's] refusal to cooperate, and after petition by [Ward's] attorney, an Order of court was issued by Judge Garhart on December 16, 2011 empowering the Master to transfer the property by Affidavit or Order of Court. The attorney for [Ward] requested counsel fees in the amount of $900.00 to be paid by [Appellant] for refusing to abide by the agreement.

The Property was transferred in February of 2012. As per the consent agreement, the Master retained the sum of $25,000.00 from the equity in The Property to be held until determination of Master's hearing regarding the distribution of equity to the parties. [Ward] received the equivalent of $36,000.00 in equity from the sale of The Property at the time of the closing because the payoffs on the liens were not as high as estimated.

[Ward] was a full time employee at Erie Insurance Exchange from the date of the purchase of The Property until the present. During that same time period [Appellant] was never employed by a third party, except for work he did for his father in return for windows that he provided for The Property. No evidence was submitted to show the value of the windows. [Appellant] testified that he had occasional "handy man" type jobs which he performed for other parties for pay or for trade. An example is that he performed work at a house and received a heat pump in return. [Appellant] provided no evidence of the amount of payments received, either in cash or assets. [Appellant] testified that he performed property management and maintenance duties on the properties located in Ohio. No evidence was provided for the amount of time or expenses in

- 4 -

doing so. [Appellant] testified that his other contributions to the household were grocery shopping, cleaning, maintenance and repair of The Property, and child care services. The child care continued until 2006, at which time the children were placed in day care when [Ward] was at work, which was paid for by [Ward]. No evidence was provided to show the amount paid for child care. [Ward] testified that she did as much or more of the household chores as [Appellant], shopping for groceries, doing her own laundry, and much of the cooking.

Between December 2003 and the present, the parties maintained the following bank accounts:

a. Erie Community Federal Credit Union savings account in [Ward's] name;

b. Erie Community Federal Credit Union checking account in joint names;

c. National City account in joint names; and

d. Northwest Savings Bank account in joint names, which account was closed in May 2010 and reopened in [Ward's] name.

At the time the Northwest Savings Bank account was closed, the sum of $400.00 was paid to [Appellant] as his share of the account. [Ward's] paychecks were deposited into the credit union accounts which were used as the main household operating accounts. [Ward] also testified credibly that other than small amounts of money occasionally received by [Appellant], the source of the funds in those accounts consisted of her paychecks. Some deposits were made into the accounts from funds received from the Ohio properties when the parties first resided in Erie, but no evidence was provided to show the amounts. Other than his share of the rents, no meaningful contributions to the account were made by [Appellant].

[Ward] provided a spreadsheet … uncontested by [Appellant], of the payments made for The Property from the household account for the mortgage, second mortgage, taxes, electricity, gas, water, sewer, trash collection, telephone, and Lakeshore Country Club dues. The total amount paid for those items between January 1, 2004 and December 31, 2011 was $144,891.63.

- 5 -

[Appellant's] repairs of the Ohio rental properties could have maintained or increased the value of the Ohio properties which value is presently contained in those properties. No testimony regarding the nature of the repairs was presented by [Appellant]. Rental income in excess of costs would have been a contribution toward the parties' expenses, but no evidence was shown or testimony given as to what those rental incomes were. Credible testimony was given that the rental income after expenses, would be minimum.

[Appellant] made improvements to The Property including replacing the kitchen cabinets, which he received from his parents after a fire in the parents' house, replaced the tile floor in the kitchen with tile that was received from his parents after the fire at their house, replaced a sink, faucets and a counter top, which counter top was received in trade for services. [Appellant] did some work on both bathrooms, although neither of the bathrooms were completed; he also replaced 22 windows in The Property, which windows were given to him by his parents. [Appellant] presented no testimony regarding either the number of hours spent at these tasks nor the fair market value of the work completed. Photographic evidence … provided by [Ward] of the repairs that were made by [Appellant] to The Property showed incomplete and substandard work, including ineffective roof repairs, incomplete work on the bathrooms, the kitchen ceiling, the kitchen flooring, the ceiling in the garage, the ceiling in the son's room, and gutter and trim work. The hall bathroom had no bath tub, shower or walls, and only expose[d] studs and insulation were present. Part of the roof repair was accomplished by placing a bucket and a piece o[f] tin [in] the attic above their son's bedroom to funnel leakage into the bucket.

As of the date of this Report the Master fees amount to $5,272.50. Costs, including an appraisal report were $430.50. [Ward] has paid to the Master the sum of $2,056.00 and has paid her share in the amount of $82.52 for the court reporter's bill for the Master's hearing. [Appellant] has paid the sum of $1,000.00 and has not paid the $82.52 for the court reporter. Therefore, as of this date, [Ward] owes the sum of $795.50 to the Master. [Appellant] owes the sum of $1,851.50 to the Master and $82.50 to the court reporter.

The Master concludes that [Ward's] contribution toward The Property was $144,891.00 in cash and the household duties

which she performed during the ownership of the property such as cooking, cleaning, caring for the children and paying for the child care. There was no quantitative testimony to describe the dollar value of these contributions other than the cash payments. The contribution of [Appellant] toward The Property was his share of income derived from the ownership of the Ohio properties that was deposited into the household account, the repair of The Property, cleaning, buying groceries, and child care. There was no quantitative testimony to describe the dollar value of any of those contributions. The Master concludes that the non-monetary contributions to the household by the parties is impossible to quantify accurately, either because of its nature or because of lack of specific details. Most of the non-monetary contributions did not have the effect of increasing the value of The Property, including many of the household repairs performed by [Appellant]. Likewise, the unspecified rents from the Ohio properties, which would have been a contribution by both parties, and the payment of child care services by [Ward], are also unknown. The Master concludes that the vast majority of the increase in value of The Property was the result of the $144,891.00 in cash that was paid almost exclusively by [Ward]. The Master concludes that neither party should receive credit for an increase in the equity in The Property for their performance in household chores including cleaning, buying groceries, child care, payment of child care costs or cooking. Further, the Master concludes that the upkeep, repairs and other work done on The Property by [Appellant] have some role, however small, in increasing the value of The Property. There is little testimony regarding the dollar value of such upkeep and repairs but the Master believes it would be unfair not to ascribe a small proportion of the equity for that work.

For these reasons, the Master recommends the award of the equity in The Property in the amount of $61,000.00 should be distributed in the amount of $57,000.00 to [Ward], and $4,000.00 to [Appellant]. This would require the payment of $21,000.00 of the amount held in escrow by the Master to [Ward] and $4,000.00 to [Appellant]. Further, an award of $900.00 should be made in favor of [Ward] and against [Appellant] for the attorney fees incurred in obtaining the court order that was required to convey The Property due to [Appellant's] refusal to cooperate. Lastly, the Master recommends that the Master's fees and expenses be divided equally between the parties. The amount owed at this time by

[Ward] is $795.50 and the amount owed by [Appellant] is $1,851.50. [Appellant] must also pay $82.52 to the [court reporter] Ferguson & Holdnack.

Master's Report, 11/20/13, at 1-11 (unnumbered) (headings and numerical paragraph formatting omitted).

On January 15, 2014, the trial court adopted the Master's Report. On April 15, 2014, Ward filed a praecipe for judgment consistent with the trial court's January 15, 2014 order. On the same date, a final judgment was entered consistent with the trial court's January 15, 2014 order. On May 5, 2014, Appellant filed a notice of appeal. The trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant presents one issue for our review:

> I.   Whether the trial court committed an error of law, not supported by the evidence and rising to the level of a clear abuse of discretion, by failing under Pa. Rule 1569(c) and Pa. Rule 1570(a)(5) to modify the Master's Report filed November 20, 2013 (7% of equity to appellant) so as to award Appellant, a former co-tenant, his lawful and/or equitable share of home equity (50%) in as much as he rendered services and [Ward] derived benefits from the same?

Appellant's Brief at 7.

In reviewing this appeal, we are mindful of the following:

> Partition of real property is governed by the Rules of Civil Procedure. *See* Pa.R.C.P. 1551–75[,] [Reviewing a partition order is] a question concerning interpretation of these Rules, and thus is a question of law. Therefore, our standard of review is *de novo. LaRue v. McGuire,* 885 A.2d 549, 553 (Pa. Super. 2005). Further, "[p]artition is a possessory action; its purpose and effect being to give to each of a number of joint owners the possession [to which] he is entitled ... of his share in severalty.

It is an adversary action and its proceedings are compulsory. The rule is that the right to partition is an incident of a tenancy in common, and an absolute right." *Lombardo v. DeMarco,* 350 Pa. Super. 490, 504 A.2d 1256, 1260 (1985) (quotation and citations omitted).

***Bernstein v. v. Sherman,*** 902 A.2d 1276, 1278 (Pa. Super. 2006).

Appellant contends that the trial court erred by "failing under Pa. Rule 1569(c) and Pa. Rule 1570(a)(5) to modify the Master's Report." Appellant's Brief at 7. Pennsylvania Rules of Civil Procedure 1569 and 1570 provide:

**Rule 1569. Master's Report. Exceptions**

(a) A master who is appointed by the court shall file a report with respect to the matters submitted. []

***

(b) Within ten days after notice of the filing of the report[,] exceptions may be filed by any party to rulings on evidence, to findings of fact, to conclusions of law and to the proposed order. The [trial] court may, with or without taking testimony, remand the report or enter a decision in accordance with Rule 1570 which may incorporate by reference the findings and conclusions of the master in whole or in part.

**Rule 1570. Decision and Order**

(a) The [trial court's] decision shall include findings of fact as follows:

***

(5) [regarding] the credit which should be allowed or the charge which should be made, in favor of or against any party because of use and occupancy of the property, taxes, rents or other amounts paid, services rendered, liabilities incurred or benefits derived in connection therewith or therefrom;

Pa.R.C.P. 1570(a)(5).

Specifically, Appellant argues that the trial court erred because:

> In essence, the trial court gave Appellant no credit under Pa.R.C.P. 1570(a)(5), no credit for being a co-tenant and co-mortgagee, and no credit for even the passive appreciation of the real property, which would have amounted to an award of $[30],500 to [Appellant]. The trial court's Order defies all logic, other than to establish that it stripped Appellant of his property rights and a large portion of his life savings in the form of the real property's equity. Appellant should have been awarded $30,500 of the real property's equity, [which] amount[s] to a 50% share [of the equity].

Appellant's Brief at 25. Appellant contends that he rendered services to [Ward] (tangible and intangible), and [Ward] derived benefits (tangible and intangible) from said services, all pursuant to Pa.R.C.P. 1570(a)(5). Appellant's Brief at 18. Appellant emphasizes:

> During the parties' entire relationship, Appellant stayed home, provided companionship to [Ward] and raised the parties' two boys, whereas [Ward] worked outside of the home. Appellant was also responsible for managing three rental properties in Ohio that the parties' comingled funds from and paid bills with, Appellant purchased groceries and did other shopping, home maintenance/repair, and cooking.

Appellant's Brief at 18 (citations to the hearing transcript and record omitted).

Master Kubinski explained that in partitioning the Property's equity, he considered the contributions of the parties, the testimony and evidence adduced at the hearing or lack thereof, and equities to be applied to the circumstances. *See* Master's Report, 11/20/13, at 9-11 (unnumbered). Our

review of the record and applicable case law supports the trial court's adoption of the Master's report and the trial court's entry of judgment.

Appellant concedes that "his contributions to the relationship were intangible, whereas [Ward's] were more tangible." Appellant's Brief at 18. Appellant, however, stresses that he "did laundry, shopped for groceries, prepared dinners, did miscellaneous housework, and home repairs." *Id.* at 22 (citations to hearing transcript omitted). Nonetheless, the housework and repairs referenced by Appellant do not mandate an award. In affirming a trial court's order adopting a Master's denial of a credit for improvements to real estate which was being partitioned, we explained:

> "As a general rule, where a cotenant places improvements on the common property, equity will take this fact into consideration on partition and will in some way compensate him for such improvements, provided they are made in good faith and are of a necessary and substantial nature, materially enhancing the value of the common property." 68 C.J.S. Partition, § 139(a), *see also Weiskircher v. Connelly,* 248 Pa. 327, 93 A. 1068 (1915) (contribution allowed in partition action where "it was *necessary* to remodel, improve and alter the building erected upon the land so conveyed to [the parties]."); and *Appeal of Kelsey,* 113 Pa. 119, 125, 5 A. 447, 449 (1886) ("[A] tenant in common is liable to his co-tenant for repairs *absolutely necessary* [.] ) (emphasis added). The Master also recognized this principle and found that credits can be claimed only for those improvements "that may be necessary to preserve and protect the integrity of the existing premises for the common benefit of all the co-tenants." (Findings of Fact and Conclusions of Law at 3.). **Thus, as a threshold matter, the improvements for which appellants seek credit must have been "necessary" to preserve or safeguard the residence**. Appellants provide no authority for their claim that remodeling a bathroom, placing aluminum siding on a house, erecting a sun porch or landscaping are "necessary" improvements within the meaning of our law. In the absence of such authority, we are

- 11 -

unwilling to find that these enhancements, which appear to be essentially cosmetic in nature, constitute "necessary" improvements. Thus, appellants' claim fails.

\*\*\*

The Master also found that appellants had failed to provide any evidence concerning the degree to which the improvements enhanced the property value. Similarly, in their brief, appellants note only that the property value increased from its purchase price of $5,500 in 1970 to its stipulated value of $50,000 in 1995. While we agree with appellants that some of this value may be attributable to the improvements at issue, appellants' offer is simply too speculative to provide any reasonable basis for a credit against appellee's share of the residence. *See In re Huffman's Estate,* 349 Pa. 18, 21, 36 A.2d 638, 639 (1944) ("Without evidence on which the auditor could make a finding that the value of the property was enhanced by this expenditure [for a water supply system], it was properly disallowed.").

***Bednar v. Bednar,*** 688 A.2d 1200, 1205 (Pa. Super. 1997) (emphasis supplied).

Here, Appellant has not demonstrated that his installation of kitchen cabinets, his replacement of 22 windows, and his replacement of kitchen floor tiles, sink, faucets, and a countertop were "as a threshold matter, … necessary to preserve or safeguard" the Property. ***Id.*** Significantly, Appellant has further failed to demonstrate how the "incomplete and substandard work, including ineffective roof repairs, incomplete work on the bathrooms, the kitchen ceiling, the kitchen flooring, the ceiling in the garage, the ceiling in the son's bedroom, and gutter and trim work" met the foregoing criteria. Master's Report, 11/20/13, at 8 (unnumbered); ***Bednar***, ***supra***, at 1205. Therefore, based on the evidence presented and testimony received at the hearing, Master Kubinski could have properly recommended,

and the trial court could have properly adopted, a denial of *any* credit to Appellant for the improvements to the Property.

Instead, Master Kubinski, concluded that "the upkeep, repair and other work done on The Property by [Appellant] have some role, however small, in increasing the value of The Property. There is little testimony regarding the dollar value of such upkeep and repairs but the Master believes it would be unfair not to ascribe a small proportion of the equity for that work." Master's Report, 11/20/13, at 10 (unnumbered). Therefore, since **Bednar** would have allowed the Master, and the trial court by adoption, to deny any credit to Appellant, we do not find that the trial court erred or abused its discretion in exercising its equitable powers in adopting the Master's Report, which awarded Appellant $4,000 of the Property's equity. **See Krosnar v. Schmidt, Krosnar, McNaughton, Garrett Co.,** 423 A.2d 370, 374 (Pa. Super. 1980) (a partition order will be affirmed if it is supported by competent evidence, and the trial court has not misapplied the law or manifestly abused its discretion); **Lombardo v. DeMarco,** 504 A.2d 1256 (Pa. Super. 1985) (affirming partition order supported by record).

Accordingly, we affirm the judgment which was entered consistent with the trial court's order adopting the Master's November 20, 2013 Report.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2015