J-S33020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DWAYNE G. WEAVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE E. WEAVER | : | |
| | : | |
| Appellant | : | No. 210 MDA 2019 |

Appeal from the Order Entered January 2, 2019
In the Court of Common Pleas of Centre County
Civil Division at No(s): 2016-395

BEFORE: LAZARUS, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.: **FILED NOVEMBER 08, 2019**

George E. Weaver appeals from the order entered January 2, 2019, in the Court of Common Pleas of Centre County, denying his post-verdict motions and making final the trial court's judgment entered on September 4, 2018. This timely appeal is taken from a non-jury trial regarding land partition issues between brothers, George E. and Dwayne G. Weaver. George Weaver now raises two jurisdictional issues and four claims of trial court error. After a thorough review of the certified record, submissions by the parties and relevant law, we affirm based on the trial court opinion. We provide additional reasoning regarding the challenge to jurisdiction.[1]

---

[1] Because we rely on the trial court opinion, we need not provide detail on the four claims of trial court error. Those claims are the trial court erred: 1) in applying offsets, 2) applying Pa.R.C.P. 1560(a) rather than Pa.R.C.P. 1560(b) or (c), 3) using an average valuation of the appraisals, and 4) considering evidence of Appellee's [Dwayne G. Weaver] residence.

We refer to the trial court opinions dated September 4, 2018 and January 2, 2019 for a brief review of the underlying facts.

> On February 1, 2016, Dwayne Weaver ("Dwayne") filed a Civil Complaint for Partition and Division of Property which named his brother, George Weaver ("George") as the Defendant. On February 26, 2016, George filed an Answer and New Matter to the Complaint for Partition. Upon agreement of the parties, the Court entered an Order Directing Partition of the property in question on March 28, 2018. Also on March 28, 2018, the Court held a Non-Jury Trial on this matter, which included a view of the property subject to partition. Both parties submitted Proposed Findings of Fact and Conclusions of Law on April 13, 2018.

Trial Court Opinion, 9/4/2018, at 1.

> Further,

> This case arises from a Complaint in Partition filed by [Dwayne G. Weaver] seeking division of property held by brothers Dwayne and George as tenants-in-common. This case proceeded to a Non-Jury Trial on March 28, 2018. Before the Court took testimony, the parties agreed to the entry of an Order directing partition of the property. The Court dictated said Order, but through an administrative error, the Order was never produced and filed of record. The Court proceeded to take testimony and evidence and issued an Opinion and Verdict on May 9, 2018. [George Weaver] filed an appeal on June 11, 2018 and the Superior Court remanded the case due to the procedural defect. This Court then entered a Part 1 Order directing partition on September 4, 2018 and, on that same date, re-issued its Opinion and Verdict.

Trial Court Opinion, 1/2/2019, at 1-2.[2]

---

[2] **Kapcsos v. Benshoff**, 194 A.3d 139 (Pa. Super. 2018) (*en banc*), makes it clear that the Pennsylvania Rules of Civil Procedure require two separate orders in a partition action. Pursuant to **Kapcsos**, the Part 1 order determines whether the property is properly subject for partition and what portion(s) of the property are at issue. The Part 1 order determines the parameters of the pie (this metaphor is taken from **Kapcsos**) that is to be divided. This order may be immediately appealed. Once the Part 1 parameters have been set, the Part 2 order actually partitions the property. This order is also appealable.

As noted above, George Weaver's first two issues address the jurisdictional question raised by the initial ministerial omission regarding the stipulated order directing partition. First, George Weaver posits the trial court had no jurisdiction to conduct the non-jury trial without the Part 1 order having been filed, and second, he claims the subsequent entry of the Part 1 order, on remand, with the re-entry of the verdict, failed to correct the error. George Weaver relies on **Kapcsos**, **supra**, and **Jacobs v. Stephens**, 204 A.3d 402 (Pa. Super. 2019) to support his claim. We disagree.

All parties agree that such a stipulation occurred and that the Part 1 order was meant and anticipated to be filed. Accordingly, all parties agreed to proceed with the non-jury trial. Because the order directing partition was stipulated to between the parties, there was no reason to wait for the 30-day appellate period to expire before taking testimony on the substance of the issue. Clearly, no one complained at the time that the non-jury trial was premature. Had the Part 1 order been filed as expected, this would not have been at issue.

It was not until George Weaver appealed the judgment that the Superior Court noticed, **sua sponte**, that the Part 1 order had not been entered of record, rendering the appeal premature. The Superior Court also noticed that George Weaver had filed his appeal prior to the trial court ruling on his post-trial motion. Without a ruling on his post-trial motion, no judgment could be entered. Without a judgment, the appeal was again, premature. Therefore, the appeal was quashed. **See Order**, 8/23/2018.

- 3 -

Interestingly, the *sua sponte*, *per curiam* order of our Court only recognized that the failure to enter the Part 1 order divested the trial court of jurisdiction to enter the Part 2 order and therefore rendered that appeal premature. Specifically, our Court stated:

> Even if post-trial motions were denied, this appeal is premature. A review of the trial court docket reveals that an order directing partition was not entered prior to the May 11, 2018 order.[3] "The Pennsylvania Rules of Civil Procedure 1551-1557 split a partition into two distinct, chronological parts. Each part, by rule, must produce its own, distinct, appealable order." **Kapcsos v. Benshoff**, ___ A.3d ___, 2018 WL 3598666, at *2 (Pa. Super. July 27, 2018). Failure to secure and record a Part 1 order deprives the trial court of jurisdiction to enter a Part 2 order. **Id.** at *5.

Order, 8/23/2018.

The order did not inform the trial court that Part 2 *hearing* was held without jurisdiction, it told the trial court that the failure to record the Part 1 order divested the trial court of jurisdiction to enter the Part 2 *order*. This interpretation of the order is the most logical. While in **Kapcsos** our Court determined the trial court was required to retry Part 2 *de novo*,[4] the distinguishing features of the instant matter do not mandate that remedy. In **Kapcsos**, the parties did not seek a Part 1 order and the trial court never issued or entered a Part 1 order. This complete failure to adhere to the Rules of Civil Procedure rendered the Part 2 order a nullity. Instantly, the parties

---

[3] The May 11, 2018 order contained the findings of fact and verdict.

[4] **See Kapcsos**, 194 A.3d at 145.

- 4 -

sought a Part 1 order, the parties entered into a stipulation agreeing to the requirements of a Part 1 order, and the trial court dictated the Part 1 order, apparently to the satisfaction of the parties. Only a ministerial error prevented the order from being docketed. The factual underpinnings of **Kapcsos** are far different from those instantly present. Nonetheless, as the 8/23/2018 order of our Court indicated, the failure to record the Part 1 order divested the trial court of the jurisdiction to enter a final Part 2 order. In this circumstance, it is the order that matters, procedurally, not the hearing. **Kapcsos** makes clear that it is the Part 2 order that divides the property that is unsupportable without the Part 1 order.

Accordingly, because the Part 1 order had been sought, was agreed to, and was dictated, but inadvertently not docketed, we do not believe the **Kapcsos** decision divested the trial court of the jurisdiction to take evidence that would be used to determine the Part 2 order. The trial court and the parties **all** knew the parameters of the Part 1 order before the non-jury trial commenced. All of the procedural safeguards embodied in the Part 1 order and required by **Kapcsos** existed. The failure to docket the Part 1 order had no effect on the information collecting process that occurred during the non-jury trial. The failure to docket the Part 1 order merely rendered the subsequent Part 2 order a nullity.

We note as well that if the *sua sponte* order of August 23, 2018 was meant to nullify the non-jury trial, there would have been no need to discuss the failure to rule upon the post-verdict motions. If the *sua sponte* order was

meant to be interpreted as nullifying the non-jury trial, then the post-verdict motions would have become legally irrelevant – objections to a trial that legally never occurred.

George Weaver also argues that once our Court quashed the prior appeal, the trial court's order memorializing the Part 1 stipulation and then re-issuing the original verdict was infirm pursuant to *Jacobs v. Stephens*, 204 A.3d 402 (Pa. Super. 2019). In *Jacobs*, the trial court combined the Part 1 and Part 2 orders in a single order that did not allow for appeals from each order. Accordingly, our Court ruled upon the challenges raised in the Part 1 appeal, but quashed those issues related to the Part 2 appeal. Once again, the instant facts are distinguishable. While it is true that after the prior appeal was quashed, the trial court entered separate Part 1 and Part 2 orders on the same day, making it impossible to appeal both orders. Unlike *Jacobs*, it was apparent to the trial court from before the original appeal that there would be no challenge to the Part 1 order, which was *stipulated to* by both parties. George Weaver did not object to the stipulated Part 1 order when it was dictated by the trial court, did not object to the order in the first appeal, and has no objection to the merits of the stipulated Part 1 order now. Admitting that there was a technical error in entering the required two orders on the same day, the error was harmless in that the Part 1 order has never been, and is currently not challenged. Because George Weaver never sought to renege on his stipulated agreement, he was not harmed by the entry of dual orders on the same day.

- 6 -

George Weaver has presented arguments regarding the Part 1 order that track, in many ways, the **Kapcsos** and **Jacobs** cases. However, the factual differences between the instant matter and those cases that we have highlighted, lead us to distinguish this appeal. While George Weaver's arguments may appear at first glance to be inviting, strict application of **Kapcsos** and **Jacobs** would lead to an absurd result. Here, the protections required by separate Part 1 and Part 2 orders were provided, in fact, although the Part 1 order was not docketed due to an administrative error. Strictly applying **Kapcsos** would require the parties to spend extra time and money retrying this matter to the same verdict.[5]

Similarly, if we were to vacate the Part 2 order and remand the matter to allow the 30-day appeal period for the Part 1 order, George Weaver, who has never, including now, sought to challenge any aspect of the Part 1 order, would simply allow the 30-day period to expire and then refile this appeal, bringing all parties back to the current position, except, of course, for the additional time and money spent. We see no particular reason to impose this burden upon the parties and the trial court.

In all other regards, we rely upon the able analysis of the trial court in disposing of George Weaver's remaining issues.

---

[5] There is nothing of record to suppose new evidence exists that could change the verdict, nor is there any reason to suppose the trial court would change any of the complained of rulings. Accordingly, the outcome would be the same.

Regarding the four claims of trial court error, we have reviewed the certified record, as well as the submissions by the parties, and find the trial court's reasoning on these claims to be supported by the record and free from legal error. Accordingly, we rely on the trial court opinion in this regard. George Weaver is not entitled to relief on these claims.

Judgment affirmed. Parties are directed to attach a copy of the trial court's 9/4/2018 and 1/2/2019 opinions in the event of further proceedings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/08/2019

Filed 2/22/2019 3:18 PM Superior Court Middle District
210 MDA 2019

# IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA

## CIVIL ACTION - LAW

DWAYNE G. WEAVER )
    Plaintiff, )
                 )
    v. )        No. 2016-395
                 )
GEORGE E. WEAVER, )
    Defendant. )

*Attorney for Plaintiff:*         *Robert Englert, Esquire/*
                              *Jessalyn L. Cool, Esquire*

*Attorney for Defendant:*      *Joseph M. Scipione, Esquire*

## OPINION AND VERDICT

On February 1, 2016, Dwayne Weaver ("Dwayne") filed a Civil Complaint for Partition and Division of Property which named his brother, George Weaver ("George") as the Defendant. On February 26, 2016, George filed an Answer and New Matter to the Complaint for Partition. Upon agreement of the parties, the Court entered an Order Directing Partition of the property in question on March 28, 2018. Also on March 28, 2018, the Court held a Non-Jury Trial in this matter, which included a view of the property subject to partition. Both parties submitted Proposed Findings of Fact and Conclusions on Law on April 13, 2018. After review of the filings, the arguments of the parties, and the applicable law, the Court is prepared to render a verdict in this matter.

## FINDINGS OF FACT

1. Brothers Dwayne and George Weaver were given title to the property at issue ("Subject Property") in the case through a deed executed by Ruby L. Weaver on August 19, 1994. This deed is recorded in the Centre County Recorder of Deeds Office at Record Book 775, Page 848.

 ☒O ☐RD ☐S

2. Dwayne and George own the Subject Property as tenants-in-common.

3. The Subject Property consists of two noncontiguous parcels.

4. The first parcel ("Parcel 1") is identified as Centre County Uniform Parcel Identifier Number 03-8-32.

5. The second parcel ("Parcel 2") is identified as Centre County Uniform Parcel Identifier Number 03-8-32G.

6. Parcel 1 has been assessed as containing 44.97 acres of land.[1]

7. Parcel 2 has been assessed as containing 91.95 acres of land.

8. A mobile home located on Parcel 2 has been assigned Centre County Uniform Parcel Identifier Number 03-008-032G-001.

9. The mobile home has been located on Parcel 2 since 1994.

10. Parcel 1 consists almost entirely of tillable fields referred to by the parties as the North Fields.

11. Parcel 2 consists of a Wooded Area, a one acre section referred to as the Mobile Home Area, and tillable fields, referred to by the parties as the South Fields.

12. When the parties received the property in 1994, Parcel 1 and the tillable portion of Parcel 2 were subject to agricultural leases. The parties stopped leasing the property for agricultural use in approximately 2011.

13. From the time the agricultural leases ended, Dwayne began farming Parcel 1 for grains.

14. From the time the agricultural leases ended, George began farming Parcel 2 for hay.

---

[1] Although Plaintiff asserts that Parcel 1 was surveyed as containing 39.2 acres, this survey was not introduced at trial and will therefore the Court will rely on the tax assessment records to determine the property's acreage. The Court further notes that both parties' appraisers used 44.97 acres as the size of Parcel 1.

15. Dwayne has undertaken efforts to improve the soil on Parcel 1 for the purpose of farming.

16. George has undertaken efforts to improve the soil on the tillable portions of Parcel 2 for the purpose of farming.

17. The mobile home on Parcel 2 is titled to George's daughter, Amy Weaver (f/k/a Amy Kolp).

18. Amy Weaver lived in the mobile home until December 6, 1996 when she and George first rented the mobile home and the surrounding acre of land out to other individuals. At the time of the Non-Jury Trial, Amy and George were still renting out the mobile home.

19. The parties have stipulated that George received $111,350 in rent for the mobile home from December of 1996 until the date of the non-jury trial.

20. George has claimed $15,394 for cleaning and maintenance, $2,000 in insurance expenses, $2,124 in utilities, and $621 in supplies for the mobile home in the tax years of 2007 through 2016.

21. George did not keep records of the expenses associated with the mobile home in the tax years of 1996 through 2006.

22. George testified that he believes $200 of mobile home rent per month could be reasonably attributed to use of the land.

23. Dwayne presented no testimony to indicate what portion of the mobile home rent should be attributed to use of the land and what portion should be attributed to use of the mobile home.

3

24. The source of water for Dwayne's home is a well located on Parcel 2, just across Mantown Road from Dwayne's home.

25. George presented an appraisal of the property which indicates the combined value of both parcels is $532,656.75.

    a. This appraisal lists the value of Parcel 1 as $237,837.43.

        i. This appraiser found that of Parcel 1's 44.97 acres, 42.74 acres are tillable and 2.23 acres are wooded.

        ii. The appraiser valued the tillable land at $5,500 per acre and the wooded land at $1,241 per acre.

        iii. Based on these prices and areas of land, the value of the tillable land on Parcel 1 would be $235,070 and the value of the wooded land on Parcel 1 would be $2,767.43.

    b. This appraisal lists the value of Parcel 2 as $294,819.32.

        i. This appraisal found that of Parcel 2's 91.95 acres, 42.43 acres are tillable and 49.52 acres are wooded.

        ii. The appraiser valued the tillable land at $5,500 per acre and the wooded land at $1,241 per acre.

        iii. Based on these prices and areas of land, the value of the tillable land on Parcel 2 would be $233,365 and the value of the wooded land on Parcel 2 would be $61,454.32.

26. Dwayne presented an appraisal of the property which indicates the combined value of both parcels is $735,000.

    a. This appraisal lists the value of Parcel 1 as $269,820.

        i.   The appraiser valued all land on Parcel 1 at $6,000 per acre and indicated that Parcel 1 contained 44.97 acres of land.

   b.   This appraisal lists the value of Parcel 2 as $465,435.

        i.   The appraiser valued the wooded/residential land on Parcel 2 at $3,300 per acre and indicated that 31.95 acres of Parcel 2 are wooded/residential.

           1.   Therefore the value of wooded/residential land on Parcel 2 would be $105,435.

        ii.   The appraiser valued the tillable land on Parcel 2 at $6,000 per acre and indicated that 60 acres of Parcel 2 are tillable.

           1.   Therefore, the total value of the tillable land on Parcel 2 would be $360,000.

## CONCLUSIONS OF LAW

"An action for partition may be brought by any one or more co-tenants." Pa.R.C.P. 1553. The defendants to such action must be all co-tenants not named as plaintiffs. Pa.R.C.P. 1553. "Partition is a possessory action; its purpose and effect being to give each of a number of joint owners to possession [to which] he is entitled...of his share in severalty." *Lombardo v. DeMarco*, 504 A.2d 1256, 1260 (1985). Before the court may determine how the property will be partitioned, the court must find that partition is appropriate and enter an order directing partition. Pa.R.C.P. 1557.

If possible, the court should partition the property "into purparts in proportion to the value of the interests of the parties." Pa.R.C.P. 1560(a). If division into proportional purparts is not possible, then the court may divide the property into a number of purparts that is equal to the

number of parties without taking proportionate value into account. Pa.R.C.P. 1560(b). If the court is unable to proceed under either of these methods, the court may divide the property into "such number of purparts as shall be most advantageous without regard to the number of parties." Pa.R.C.P. 1560(c).

If the court divides the property pursuant to Pa.R.C.P. 1560(b) or (c), the court must provide the proposed partition to the parties and provide twenty (20) days for the parties to object to the proposal. Pa.R.C.P. 1566(a). If a party objects to the proposal, the property shall be sold. Pa.R.C.P. 1566(c).

## DISCUSSION

The Court finds that it can, and therefore must, divide the property at issue pursuant to Pennsylvania Rule of Civil Procedure 1560(a). Under this subsection, the property must be divided in proportion to the value of the interests of the parties. Though portions of the property are suitable for different uses, the Court will attribute a value to each area of land and divide the property in accordance with the interest owned by each party. The two parties in this case would be each entitled to half of the property, except that Dwayne has asked this Court to award him additional property value to account for the amount of the mobile home's rental income that George should have paid to Dwayne.

George has been receiving rental income from the mobile home and one acre of surrounding land in the amount of $450 per month since December of 1996. During trial, George testified that he believed approximately $200 per month could be reasonably attributed to the land. No other evidence was presented to indicate how much of this $450 rent should be attributed to the mobile home and how much should be attributed to the land. The mobile home was purchased by George's daughter, Amy, and George has taken on the responsibility of the

6

mobile home's upkeep. Based on the evidence presented at trial, Dwayne would be entitled to half of the rent attributed to leasing the one acre of land. The Court will not address the expenses George claimed on his tax returns because those expenses were related to the mobile home and not to the land. Therefore, Dwayne is entitled to $100 a month beginning in December of 1996 and ending in May of 2018. Because George owes Dwayne 258 months of rent, Dwayne is owed $25,800. Dwayne has informed the Court that he wishes this to be repaid in the form of additional acreage.

The parties stipulated to the entry of the appraisal reports instead of calling the appraisers as witnesses. Based solely on the reports, the Court finds it cannot determine the credibility of each appraisal. As the evidence provided to the Court does not indicate either appraisal is more credible than the other, the Court finds it most appropriate to average the values reported by the two appraisers. The values listed for Parcel 1 (also referred to as the North Fields) are similar in both appraisals. George's appraiser valued Parcel 1 at $237,837.43 and Dwayne's appraiser valued Parcel 1 at $269,820. Therefore, the Court will value Parcel 1 at $253,828.72. The values for Parcel 2, which consists of the South Fields, the Wooded Land, and the Mobile Home Area, are much farther apart in the two appraisals. George's appraiser listed the value for Parcel 2 as $294,819.32, while Dwayne's appraiser listed Parcel 2 at $465,435. Therefore, the Court finds the value of Parcel 2 is $380,127.16. The total value of the two parcels is $633,955.88. George's appraiser has valued all tillable land at $5,500 per acre, while Dwayne's appraiser valued all tillable land at $6,000 per acre. Therefore, the Court will use $5,750 as the value of a tillable acre of land on these properties.

If the Court were to split the land into two equal portions, each brother would be entitled to $316,977.94 of the land value. However, as explained above, Dwayne is entitled to an

7

additional $25,800 of land value due the unpaid rental income. Therefore, the Court will devise a partition that gives Dwayne $342,777.94 of land value and gives George the remaining $291,177.94 of value.

Both brothers presented evidence of profits received from the other's use of their jointly-owned land. Dwayne has grown grain on the North Fields of Parcel 1. George has sold hay that he has grown on the South Fields of Parcel 2. George also testified that he at one point wanted to graze his cows on Parcel 2, but Dwayne would not agree to allow George to erect a fence. The Court finds that both brothers have made use of the properties as joint tenants and does not find that these uses warrant reimbursement of any kind. Neither party excluded the other as a result of their use of the property. Therefore, the Court has considered previous uses of the land, other than the mobile home rental, purely for the purpose of determining which specific areas of land each party should be awarded. The Court has not considered this evidence in determining the total land value due to each party.

In crafting the division of Parcel 2, the Court is mindful of several factors. First, the Court has crafted the division set forth in its Verdict so as to assure that Dwayne has control over the tillable lands of Parcel 2 that contain his water well. Second, the Court has sought to assure that George has appropriate access to his tillable portions of Parcel 2 by use of the existing access near the speed limit sign, as access does not appear to be possible from Harter Lane because Parcel 2 does not abut Harter Lane[2], access is not possible from the remainder of Parcel 2 awarded to George due to the large, steep embankment in the wooded area adjacent to the tillable lands, and, in the absence of a substantial excavation and interference with the use of the land, access is severely limited from Mantown Road due to the steep embankment from the

[2] Harter Lane appears to be a private road entirely contained on the property of the neighboring property owner. The Court is not aware of any legal obligation to the owner of the property to afford George access from Harter Lane and across the portion of the neighbor's property that sits between Harter Lane and Parcel 2.

8

corner of the property near Harter Lane and extending along the property to near the existing access point adjacent to the speed limit sign. Additionally, Dwayne has traditionally farmed the North Fields, while George has farmed the South Fields. George has maintained and rented out a mobile home and one acre of land located on Parcel 2 within the Wooded Area adjacent to Kolp Lane. The Court has also sought to provide each party with a contiguous tract of land, while also allowing each party ready access to their property.

Upon consideration of all evidence presented by the parties, the Court finds it is most equitable for Dwayne to take title to Parcel 1 and, to fulfill the remaining land value, for Dwayne to take title to land from Parcel 2 in the amount of $88,949.22. As the Court has found tillable land on these properties to have a value of $5,750, Dwayne's portion of Parcel 2 will consist of 15.47 acres. Included in this Opinion and Order at Attachment A is a diagram of the anticipated boundaries.

## VERDICT

AND NOW, this 4th day of September, 2018, having now entered an Order Directing Partition, the Court hereby re-enters its Verdict originally filed on May 11, 2018 to correct the administrative error in which the Verdict was entered prior to the entry of an Order Directing Partition. It is the intent of the Court that the time for filing Post-Trial Motions and Appeals shall run from the date of this Verdict's reentry. The Court therefore ORDERS as follows:

The parties shall secure a surveyor, and share the costs equally of that survey, to divide the property identified by Centre County Uniform Parcel Identifier Number 03-8-32G to provide Dwayne Weaver with 15.74 acres of said property. The property identified by Centre County

9

Uniform Parcel Identifier Number 03-8-32 shall be awarded entirely to Dwayne Weaver in this division. Dwayne's portion of Parcel 03-8-32G will consist of:

1. A northeastern boundary that stretches from the most northern corner of the Parcel to the most northern point at which the Parcel's boundary adjoins Hog Back Road.

2. The southeastern boundary shall travel parallel to Mantown Road, from the most northern point at which the Parcel's boundary touches Hog Back Road, to the edge of the tree line. From there, the southeastern boundary will continue along the tree line until the tree line ends.

3. The southwestern boundary shall be parallel to Harter Lane and extend from the point at the end of the tree line to a point within the field to be determined by a survey of the land. This point shall not be set within 100 feet of Mantown Road.

4. The northwestern boundary shall run parallel to Mantown Road from the point described above in section 3 to a point in the tillable fields even with the speed limit sign located just beyond the small access road. This point shall not be set within 100 feet of Mantown Road.

5. From that point even with the speed limit sign, the boundary shall then travel to the point on Mantown Road where the speed limit sign is located.

6. The northeastern boundary shall then follow Mantown Road to the most northern point of the Parcel.

7. The length of the southwestern boundary will be adjusted to achieve the goal of awarding Dwayne 15.74 acres of land from Parcel 03-8-32G. Additionally, the boundary line extending from the northernmost property point on Hog Back Road to the tree line may be adjusted, after the land is surveyed, to achieve Dwayne's 15.74 acre award.

10

8. The remainder of Parcel 03-8-32G shall be awarded to George Weaver.

Upon completion of this survey map, the parties shall meet all subdivision regulations of the Centre County Government and Curtin Township. The parties will execute appropriate deeds transferring all interests they hold in their property to the other within 30 days of the subdivision approval.

BY THE COURT:

Brian K. Marshall, Judge

11



IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
CIVIL ACTION-LAW

DWAYNE G. WEAVER
                    Plaintiff,

VS.                                                     NO. 2016-395

GEORGE E. WEAVER
                    Defendant,

## NOTICE

Pursuant to Rule 236 of the Pennsylvania Rules of Civil Procedure, you are hereby

notified that on September 4, 2018, the following Opinion and Verdict has been entered upon the

above docket.

Mail Date of Notice: 09/05/2018            By: _____
                                                Prothonotary



**IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA**
**CIVIL ACTION - LAW**

| | |
|---|---|
| DWAYNE G. WEAVER<br>            Plaintiff, | :<br>:<br>: |
| v.            · | :<br>:     No. 2016-395 |
| GEORGE E. WEAVER,<br>            Defendant, | :<br>:<br>: |

*Attorney for Plaintiff:*                     *Robert Englert, Esquire/*
                                               *Jessalyn L. Cool, Esquire*
*Attorney for Defendant:*                  *Joseph M. Scipione. Esquire*

## OPINION AND ORDER

Presently before the Court are the Second Omnibus Post-Trial Motion and Exceptions filed by Defendant George Weaver ("George") on September 14, 2018. Plaintiff Dwayne Weaver ("Dwayne") filed a Response in Opposition to Defendant's Second Omnibus Post-Trial Motion and Exceptions on October 3, 2018. A hearing in this matter was held on October 25, 2018. After review of the filings, arguments, and relevant law, the Court is prepared to issue a decision in this matter.

## BACKGROUND

This case arises from a Complaint in Partition filed by Plaintiff seeking division of property held by brothers Dwayne and George as tenants-in-common. This case proceeded to a Non-Jury Trial on March 28, 2018. Before the Court took testimony, the parties agreed to the entry of an Order directing partition of the property. The Court dictated said Order, but through an administrative error, the Order was never produced and filed of record. The Court proceeded to take testimony and evidence and issued an Opinion and Verdict on May 9, 2018. Defendant filed an appeal on June 11, 2018 and the Superior Court remanded the case due to the procedural

☒O  ☐RD  ☐S

defect. This Court then entered a Part I Order directing partition on September 4, 2018 and, on that same date, re-issued its Opinion and Verdict.

## DISCUSSION

George raises eight (8) issues in his Post-Trial Motion. The Court will address each in turn.

### I. Lack of Jurisdiction

George's first argument is that this Court lacked jurisdiction to re-enter its Opinion and Verdict as the Part I Order directing partition was not final at the time the Opinion and Verdict was entered. George contends the Part I Order would not become final under the time for filing an appeal had run. In support of this argument, George cites to *Kapcsos v. Benshoff*, 194 A.3d 139 (Pa.Super. 2018). In *Kapcsos*, the court found that the trial court had no jurisdiction to enter an Order equitably dividing the property because no Order had been entered that legally terminated the joint ownership of the property. *Id.* at 145. The court reasoned because the parties had a joint tenancy with right of survivorship, and the deed reflected such, if one of the parties died, the rights of the decedents heirs would be in jeopardy. *Id.* In the case at bar, no such concerns exist. Although the Part I Order was not entered into the record until after the Non-Jury Trial, the Part I Order was entered at the joint request of the parties and was dictated in the presence of the parties. When the Part I Order was entered on the record, the Opinion and Verdict was re-entered the same day. Though the Opinion and Verdict was entered before the Part I Order became final, the parties had stipulated to partition. The parties also owned the property as tenants-in-common, so their heirs' rights were not jeopardized. The Court finds the

2

concerns present in *Kapcsos* significantly differ from the case at bar and therefore, does not find that a new Non-Jury Trial is necessary.

## II.    Effect of the Stipulation

George claims the Court misconstrued the stipulation of the parties relative to the rents George received from a mobile home on the property. George believes the Court improperly used the stipulation to determine the amount of rent received for the mobile home. However, in determining the amount of the offset, the Court relied, not on the stipulation of the parties, but instead on George's testimony that $200 of rent per month could properly be attributed to the lease of the one acre of land surrounding the residential trailer. The Court applied the offset because it found that Dwayne had been excluded from the one acre of land surrounding the residential trailer. Additionally, as Dwayne and George owned the land as tenants-in-common, each party was entitled to half of any rental income derived from the land. 68 P.S. §101; *Everly v. Shannopin Coal Co.*, 11 A.2d 700 (Pa.Super. 1940).

## III.    Award of the Offset

George argues the offset award includes damages outside the statute of limitations, was not properly pled, and was not proven at trial. The Court partially addressed the reasons for awarding an offset in discussing the effect of the stipulation. In addition to finding that George had excluded Dwayne from use of the one acre of land surrounding the mobile home, the Court also found that George failed to plead an affirmative defense of statute of limitations. As noted in Dwayne's Response in Opposition to Defendant's Omnibus Post-Trial Motions, Pennsylvania Rule of Civil Procedure 1570(a)(5) states that the Court shall include in its findings of fact,

> the credit which should be allowed or the charge which should be made, in favor of or against any party because of use and occupancy of the property, taxes or other amounts paid, services rendered, liabilities incurred or benefits derived in connection therewith or

3

therefrom...

Pa.R.C.P. 1570(a)(5). Included in Dwayne's Complaint for Partition is that allegation that, "Defendant cut a tract of land without consulting Mr. Weaver or obtaining his permission to do so and constructed a residence with utility connections, which Defendant, in turn, leased to third parties without sharing rents received with Mr. Weaver." *Complaint*, ¶ 9. For these reasons, the Court found it proper to award Dwayne an offset for the rents received for land owned as tenants-in-common.

## IV. Division under Pa.R.C.P. 1560(a)

George claims it was improper for this Court to divide the property pursuant to Pennsylvania Rule of Civil Procedure 1560(a) and that division under subsection (b) or subsection (c) was necessary. Rule 1560(a) directs that "if division can be made without prejudice to or spoiling the whole, the property shall be divided...into as many purparts as there are parties entitled thereto, the purparts being proportionate in value to the interests of the parties." Subdivision (b) of Rule 1560 is only applicable if the property cannot be divided as provided by Subdivision (a) and Subdivision (c) only applies if the property cannot be divided as directed by Subdivisions (a) or (b). Therefore, if division is possible under Subdivision (a), the property must be divided in that fashion. The Court finds that it was necessary to divide the property in question in accordance with Subdivision (a) because the Court was able to divide the property into two purparts with value proportionate to the interests of the parties. Although Dwayne's purpart is not contiguous, the Court did not find this was a bar to dividing the property in a manner that awarded each party with property value that is proportionate to the party's interest in the entire property.

4

## V. Treatment of the Appraisals

In determining the value of the property, the Court used an average of the two appraisals. The parties chose to each submit appraisal reports rather than have the appraisers testify as witnesses. Without the benefit of each appraiser's testimony, the Court had little information to rely upon in determining the credibility of each appraisal. After review of the appraisal reports, it appeared to the Court that each appraiser undervalued the land historically used by his client and overvalued the land historically used by the opposing party. Therefore, the Court found that calculating the land value based on an average of the two values for each type of land contained in the parcels would provide the most accurate results.

## VI. Division of the Woodland

George claims this Court erred in using an average valuation of the woodlands and in failing to consider that neither party wanted the woodland. The Court has addressed the reason for using an average valuation above. While the Court was aware that neither party wanted to be awarded the wooded portions of land, the Court was tasked with dividing the parcels between the two parties and as part of that task, one of the parties had to receive wooded land. As Defendant had historically used a portion of the wooded land to lease the residential trailer, the Court found that the most appropriate division would give Defendant the wooded lands.

## VII. Consideration of the Water Well

George argues the Court erred in using Dwayne's residence and the location of Dwayne's water well as factors in dividing the property. The Court did consider the location of Dwayne's water well as a factor in fashioning the partition, as Dwayne's use of the water well across the street from his home was a prior use of jointly owned property. The Court did not otherwise consider the location of Dwayne's residence when dividing the property. Dwayne was awarded

5

land across from his residence and behind his residence due mostly in part to the court's consideration of prior usage, the need for both parties to access their newly fashioned parcels, and the need to award Dwayne sufficient land to satisfy the offset for unpaid rents.

## VIII. Ouster from the Tillable Portions

George's final claim is that the Court erred in failing to find that George was ousted by Dwayne from the tillable and grazing portions of the property and in failing to award an offset for such ouster. The Court did not find George had been ousted by Dwayne's refusal to consent to George's plan to erect a fence on the property. Rather, if George had built a fence on the property, this would have been ouster of Dwayne, as George would have been using the land to the exclusion of Dwayne. Because Dwayne did not prevent George from making any use of the grazing and tillable lands, the Court found that George had not been ousted.

## ORDER

AND NOW, this 2nd day of January, 2019, Defendant's Omnibus Post-Trial Motion and Exceptions are DENIED.

BY THE COURT:

Brian K. Marshall, Judge

6