J-S43014-18

2019 PA Super 32

| GINA K. JACOBS, FORMERLY KNOWN AS GINA K. STEPHENS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| TIMOTHY L. STEPHENS | |
| Appellee | No. 1697 WDA 2017 |

Appeal from the Order entered October 16, 2017
In the Court of Common Pleas of Venango County
Civil Division at No: 872-2015

_____

| GINA K. JACOBS, FORMERLY KNOWN AS GINA K. STEPHENS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| TIMOTHY L. STEPHENS | |
| Appellee | No. 1698 WDA 2017 |

Appeal from the Order entered November 1, 2017
In the Court of Common Pleas of Venango County
Civil Division at No: 872-2015

_____

| | |
|---|---|
| GINA K. JACOBS, FORMERLY KNOWN AS GINA K. STEPHENS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TIMOTHY L. STEPHENS | |
| Appellant | No. 1770 WDA 2017 |

Appeal from the Order entered October 16, 2017
In the Court of Common Pleas of Venango County
Civil Division at No: 872-2015

BEFORE: STABILE, DUBOW AND NICHOLS, JJ.

OPINION BY STABILE, J.:                    FILED FEBRUARY 8, 2019

In these consolidated appeals, Gina K. Jacobs and Timothy L. Stephens cross-appeal from an order finding that the parties owned a property as tenants in common, directing partition of the property, and awarding $27,726.73 to Jacobs. We affirm the portion of the order finding that the parties own the property as tenants in common and directing partition of the property in equal shares. We vacate the order in all other respects, and quash these appeals in all other respects, because the trial court lacked jurisdiction to decide any other issues under our recent decision in Kapcsos v. Benshoff, 194 A.3d 139 (Pa. Super. 2018) (en banc).

The history of this case begins with Stephens' prior marriage to an individual named Kim Schwab. In January 2001, Stephens and Schwab held a wedding ceremony in Jamaica. At the time of their wedding, Stephens

believed that their marriage was legal.  Later that year, Stephens purchased a residential property at 174 Carey Lane in Cranberry Township.  Stephens paid for the property entirely with his own money, and the deed did not list Schwab as an owner due to her poor credit.  Stephens and Schwab separated in 2002, and there were no divorce proceedings.  In 2005, Schwab married another man.

Stephens and Jacobs met in July 2009, and they married on September 11, 2009.  Before they married, Stephens told Jacobs that he previously had a wedding ceremony in Jamaica, but he had consulted an attorney and did not believe that the Jamaican marriage was valid.

On September 19, 2009, Stephens and Jacobs executed a deed conveying the property at 174 Carey Lane from themselves, as "husband and wife," to themselves as "tenants by the entireties."  On August 6, 2013, Stephens and Jacobs separated.  On February 7, 2014, the trial court annulled their marriage, finding that Stephens' Jamaican marriage to Schwab was valid and that Stephens had failed to divorce Schwab.

On July 17, 2015, Jacobs filed a complaint seeking partition of the Carey Lane property and an award of reasonable rental value of the property from the date of separation onward.  Stephens filed a counterclaim seeking reimbursement for various expenditures on the property, including repairs for the garage and kitchen, payments on a roof loan, and payment of real estate taxes and homeowner's insurance premiums.

On October 16, 2017, following a non-jury trial, the trial court entered an order finding that the parties held the property as tenants in common. The court directed partition of the property. Further, the court determined that Stephens had been in sole possession of the property since the date of separation, the value of the property was $145,000.00, and the value of each party's share was fifty percent of the total value, or $72,500.00. The court credited Stephens with $44,773.77 in payments for repairs to the premises, real estate taxes, and homeowners' insurance premiums. After subtracting this credit from Jacobs' one-half share of the value of the premises, the court entered an order in Jacobs' favor in the amount of $27,726.23.

On October 19, 2017, Jacobs filed post-trial motions. Stephens did not file post-trial motions. On October 30, 2017, Stephens filed a motion to strike or dismiss Jacobs' post-trial motions on the ground that Pa.R.Civ.P. 1557 did not permit exceptions to an order directing partition. On November 1, 2017, the trial court dismissed Jacobs' post-trial motions on the ground that she "[could] not file a motion for post-trial relief in response to an order directing partition." Order, 11/1/17, at 1.

On November 13, 2017, Jacobs filed notices of appeal from the October 16, 2017 and November 1, 2017 orders at 1697 and 1698 WDA 2017, respectively. On November 27, 2017, Stephens filed a notice of appeal from the October 16, 2017 order at 1770 WDA 2017. Both parties and the court complied with Pa.R.A.P. 1925. Jacobs subsequently filed a praecipe to reduce the October 16, 2017 order to judgment.

- 4 -

In Jacobs' appeals at 1697 and 1698 WDA 2017, she raises four questions that we reorganize for the sake of convenience:

1.   Did the trial court err in giving [Stephens] credit for the payment of real estate taxes in the sum of $8,352.39 and credit for the payment of homeowners' insurance premiums in the amount of $3,779.48?

2.  Did the trial court err as a matter of law or abuse its discretion in failing and/or refusing to award [Jacobs] for her fair and reasonable rental value claim, in the amount of $325.00 per month, plus utilities from August 6, 2013 through October 16, 2017 and monthly thereafter, when the evidence was clear and uncontroverted that [Jacobs] was not in possession of the premises and [Stephens] enjoyed exclusive possession of the subject premises at all times relevant to the claim?

3.   Did the trial court err in its November 1, 2017 [order] in granting [Stephens'] motion to strike/dismiss [Jacobs'] motion for post-trial relief without conducting a hearing on [Jacobs'] motion?

4.   Did [Stephens'] failure to file a post-trial motion for relief constitute a waiver of all of the issues in his cross-appeal?

Jacobs' Brief at xi-xii (some capitalization omitted).

Stephens raises three issues in his cross-appeal at 1770 WDA 2017:

1. Given that the sole reason for the transfer of the subject property from [] Stephens to [] Stephens and [] Jacobs was the erroneous belief that the [p]arties were legally married, did the trial court err when it failed to find said transfer was void under the law of restitution and unjust enrichment, conditional gift, [or] gift made in reliance on a relation?

2. Did the trial court err when it failed to credit [] Stephens, as an offset to partition, the amount expended by him for the initial purchase price of the subject property?

3. Did the trial court err when it failed to credit [] Stephens, as an offset to partition, the value of the labor expended by him for the

necessary repairs, maintenance and preservation of the subject property?

Stephens' Brief at 23-24 (some capitalization omitted).

We must first consider sua sponte whether the trial court possessed jurisdiction to enter the October 16, 2017 order. Turner Const. v. Plumbers Local 690, 130 A.3d 47, 63 (Pa. Super. 2015) ("[W]e can raise the issue of jurisdiction sua sponte"). "[A]s a pure question of law, the standard of review in determining whether a trial court has subject matter jurisdiction is de novo and the scope of review is plenary." S.K.C. v. J.L.C., 94 A.3d 402, 406 (Pa. Super. 2014) (internal alteration, quotation marks, and citation omitted). In accordance with Kapcsos, we hold that the trial court's jurisdiction was limited to deciding whether the property was subject to partition and identifying the nature and extent of Jacobs' and Stephens' interests in the property. We quash the cross-appeals to the extent that they involve issues falling outside these boundaries.

"Partition is a possessory action; its purpose and effect being to give to each of a number of joint owners the possession [to which] he is entitled . . . of his share in severalty . . . The rule is that the right to partition is an incident of a tenancy in common, and an absolute right." Lombardo v. DeMarco, 504 A.2d 1256, 1260 (Pa. Super. 1985). "The purpose of partition is to afford those individuals who no longer wish to be owners the opportunity to divest themselves for a fair compensation." Russo v. Poliduro, 176 A.3d 326, 329 (Pa. Super. 2017). Any one or more co-tenants may bring an action for

partition, and all other co-tenants must be joined as defendants. Pa.R.Civ.P. 1553.

Kapcsos describes the law of partition procedure as follows:

Pennsylvania Rules of Civil Procedure 1551–1574 split a partition action into two, distinct, chronological parts. Rules 1551–1557 govern Part 1, and Rules 1558–1574 govern Part 2. Each part, by rule, must produce its own, distinct, appealable order.

The first order, under Pa.R.Civ.P. 1557, directs partition of the parties' legal interests into severalty . . .

The second order, under Pa.R.Civ.P. 1570, does one of three things. A Rule 1570 order may (1) divide the partitioned property among the parties, (2) force one or more of the parties to sell their interest in the land to one or more of the parties, or (3) sell the land to the general public and distribute the proceeds among the parties.

In Part 1, the court must determine whether the property is partitionable under law. In other words, Part 1 is to ascertain:

     I.     Do the parties jointly own the real estate in question?

     II.    If so, what fractional legal interests in the property does each party hold?

The answers to these questions may be admitted in the pleadings, or, if they are not, a hearing or jury trial may be needed. If the trial court answers both questions and finds that the plaintiff has established a right to partition, Rule 1557 dictates:

> the court shall enter an order directing partition which shall set forth the names of all the co-tenants and the nature and extent of their interests in the property. No exceptions may be filed to an order directing partition.

Critically, any party may immediately appeal that order under Pennsylvania Rule of Appellate Procedure 311(a)(7) (permitting some interlocutory appeals as of right). After a Part 1 order of

- 7 -

partition becomes final (either because no one appeals or an appellate court affirms it), only then may parties proceed to Part 2, where the actual division, award, or sale of the partitioned property occurs . . . .

Therefore, the entry and recording of a Part 1 order directing partition is essential to terminate a joint tenancy. Following that, Part 2 is purely an equitable proceeding where the trial judge or master balances the equities to decide what form the partitioning will take. If the property were a pie, the trial court must decide how best to serve it to the parties.

*Id.*, 194 A.3d at 141-43. At Part 2's conclusion, the court must enter a decision and order configured as follows:

(a) The decision shall include findings of fact as follows:

(1) whether the property is capable of division, without prejudice to or spoiling the whole, into purparts proportionate in value to the interests of the co-tenants;

(2) the number of purparts into which the property can be most advantageously divided, if partition proportionate in value to the interests of the parties cannot be made;

(3) the value of the entire property and of the purparts;

(4) the mortgages, liens and other encumbrances or charges which affect the whole or any part of the property and the amount due thereon;

(5) the credit which should be allowed or the charge which should be made, in favor of or against any party because of use and occupancy of the property, taxes, rents or other amounts paid, services rendered, liabilities incurred or benefits derived in connection therewith or therefrom;

(6) whether the interests of persons who have not appeared in the action, or of defendants who have elected to retain their shares together shall remain undivided;

(7) whether the parties have accepted or rejected the allocation of the purparts or bid therefor at private sale confined to the parties; and

(8) whether a sale of the property or any purpart not confined to the parties is required and if so, whether a private or public sale will in its opinion yield the better price.

(b) The order shall include:

(1) an appropriate award of the property or purparts to the parties subject to owelty where required;

(2) if owelty is required, the amount of the awards and charges which shall be necessary to preserve the respective interests of the parties, the purparts and parties for or against which the same shall be charged, the time of payment and the manner of securing the payments;

(3) the protection required for life tenants, unborn and unascertained remaindermen, persons whose whereabouts are unknown or other persons in interest with respect to the receipt of any interest; and

(4) a public or private sale of the property or part thereof where required.

Pa.R.C.P. 1570 (emphasis added).

Kapcsos was a partition action between two co-tenants, Kapcsos and Benshoff. Instead of entering the Part 1 order required under Rule 1557, the trial court skipped Part 1, moved directly to Part 2 proceedings, and conditionally awarded the property to Kapcsos subject to (among other things) payment of owelty to Benshoff. Benshoff appealed to this Court. An en banc panel of this Court unanimously quashed the appeal, reasoning:

> [A] Part 1 order must precede Part 2. [The] failure of the parties to secure and record a Part 1 order partitioning the property deprived the trial court of jurisdiction to conduct Part 2. If the

- 9 -

property is never partitioned via a Part 1 order, the court has nothing to divvy-up in Part 2, because the parties still own undivided interests in the whole. A Part 1 order must first disentangle their legal interests and extinguish rights of survivorship. Also, recording a Part 1 order is absolutely imperative to protect the various rights of the parties and their heirs.

In conclusion, by not seeking a Part 1 order to divide their legal interests in the property into severalty, the parties never completed Part 1 of these proceedings. Thus, the Part 2 trial that occurred and all relief that Mr. Kapcsos and Ms. Benshoff obtained from it were "nullit[ies]." See Mischenko v. Gowton, [] 453 A.2d 658, 660 ([Pa. Super.] 1982). As a result, once the trial judge partitions the joint property via a Part 1 order and the Recorder of Deeds has recorded it, the parties must retry Part 2 de novo, where both parties may present any evidence of monetary contributions as off-sets toward the owelty . . .

Until all of this occurs, we may not decide the merits of the case, for the General Assembly has commanded that we "shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas . . . ." 42 Pa.C.S.A. § 742 (emphasis added). Because the appealed-from order is a legal nullity, it cannot be a final order. Thus, this Court has no appellate jurisdiction over such an order.

Id., 194 A.3d at 145.

The legal principles articulated in Kapcsos govern this case, although the facts herein are slightly different. Here, unlike in Kapcsos, the trial court did not skip over Part 1. Instead, it combined Part 1 and Part 2 proceedings and entered a single order that: (a) the property was subject to partition in equal shares to Jacobs and Stephens as tenants in common, a Part 1 ruling; (b) the property's real market value was $145,000.00, a Part 2 ruling; (c) Stephens was entitled to $44,773.77 in credit, a Part 2 ruling; and (d) subtraction of this credit from Jacobs' one-half share of the value of the

- 10 -

premises resulted in an award to Jacobs of $27,726.23, a Part 2 ruling. The court only had jurisdiction to enter Part 1 rulings, not Part 2 rulings. Kapcsos, at 145 (Part 2 trial and order were "nullities" because parties never completed Part 1). Consequently, we only have jurisdiction to decide Part 1 arguments in these appeals but not Part 2 arguments.

The first three arguments in Jacobs' brief object to the amount of credit awarded to Stephens for payment of real estate taxes and homeowners' insurance, the trial court's refusal to award Jacobs rent for Stephens' exclusive possession of the premises after the date of separation, and the trial court's denial of Jacobs' post-trial motions relating to these issues. All of these are Part 2 arguments concerning the "division of the pie." Kapcsos, at 143 (in Part 2, "if the property were a pie, the trial court must decide how best to serve it to the parties"). Similarly, the final two arguments of Stephens' brief object to the court's refusal to award him credit for the original purchase price of the property and for the value of his labor to maintain the property. These, too, are Part 2 arguments relating to the appropriate "division of the pie." We lack jurisdiction to decide any of these issues.

We do have jurisdiction, however, to address two Part 1 arguments raised by the parties. First, Stephens' first argument—his transfer of the property to Jacobs was void due to the lack of a valid marriage—relates to the Part 1 inquiry of whether the property "is partitionable." Kapcsos, at 142. Next, Jacobs' fourth and final argument asserts that Stephens waived all

issues in his cross-appeal by failing to file post-trial motions. We have jurisdiction to address this to the extent it concerns Stephens' Part 1 argument that his transfer to Jacobs was void. We lack jurisdiction to address Jacobs' fourth argument to the extent it concerns Stephens' arguments on Part 2 subjects.[1]

Turning to the merits of the Part 1 arguments, the trial court rejected Stephens' argument that his September 19, 2009 transfer to Jacobs was void, reasoning:

> [I]n Pennsylvania, even if the parties transferring property amongst one another are not legally married, a valid deed still exists, as held in Thornton et al, v. Pierce et al., 194 A. 897 (Pa. 1937). See also Fredrick v. Southwick, 67 A.2d 802 (Pa. Super. 1949). In Thornton, the plaintiff was married to her first husband and lived with him until he abruptly deserted her . . . Three years after he left, the plaintiff bought the property at issue in the case exclusively with her own money. Having not heard from her first husband for eleven years, plaintiff entered into a marriage with the defendant to her subsequent action . . . Shortly after her marriage to the defendant, a deed conveyed the property the plaintiff had purchased to herself and the defendant, as

---

[1] We note that the parties timely filed their notices of appeal on the Part 1 issues. Jacobs timely appealed under Pa.R.A.P. 311(a)(7) on November 13, 2017, less than thirty days after the Part 1 determination that Jacobs and Stephens were co-tenants who each held fifty percent interests in the property. Pa.R.A.P. 903(a) (except in circumstances not relevant here, "the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken"). Stephens timely filed his cross-appeal fourteen days after Jacobs' appeals. Pa.R.A.P. 903(b) (except in circumstances not relevant here, "if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was served, or within the time otherwise prescribed by this rule, whichever period last expires").

husband and wife, stating that "[t]he purpose of this deed is to vest in the grantees named herein an estate by entireties."

Five years later, the plaintiff's first husband suddenly reappeared, and the plaintiff went to live with him and subsequently procured an annulment of her marriage to the defendant. Plaintiff also filed the action that was the subject matter of Thornton, in which she alleged that the instrument that deeded her and the defendant the property at issue as tenants by entireties should be decreed null and void, based upon the fact that they were never lawfully married. In deciding the matter, the Pennsylvania Supreme Court stated as follows:

> It is true that tenancy by entireties is limited to the case of a husband and wife, and therefore [plaintiff] and [defendant] could hold title only as joint tenants or tenants in common. But the fact that in this respect the deed was ineffective did not wholly invalidate it, nor prevent the grantees from receiving and holding title under such form of tenancy as was appropriate under the circumstances. In cases where conveyances have been made to persons described as husband and wife, because believed to be such by the grantors and by themselves, it being either expressly stated or impliedly intended that they were to take by entireties, but where it was discovered that they were not lawfully married and therefore could not hold under such a tenancy, they have been allowed to take the estate either as joint tenants or tenants in common.

Id.

As noted in Thornton above, a deed that fails to deliver property to two persons as tenants by the entirety, based on the false belief that they are legally married, is not void. But rather, it still acts as a valid deed in that they receive interests in the property as either joint tenants or tenants in common.

Trial Court Op., 2/12/18, at 14-15.

We agree with this analysis and add several observations. Thornton held that when a deed purports to convey property to tenants by the

entireties, but the parties are not actually married, the deed is ineffective to create a tenancy by the entireties. Id., 194 A. at 899. The deed, however, does not necessarily become a nullity, "there being no reason why the grantees, like any other two persons, cannot take title in some form of dual ownership appropriate under the circumstances." Maxwell v. Saylor, 58 A.2d 355, 356 (Pa. 1948) (citing Thornton). "The appropriate form of tenancy is to be determined by the intention of the parties, the ultimate guide by which all deeds must be interpreted." Riccelli v. Forcenito, 595 A.2d 1322, 1325 (Pa. Super. 1991) (citations omitted) (although purchasers who were not married could not take title to property as tenants by entireties, evidence showed they intended to create right of survivorship, and thus, they held estate as joint tenants with right of survivorship; language in deed, which included form of estate taken, "tenants by the entireties," was sufficiently specific to create survivorship rights); see also Teacher v. Kijurina, 76 A.2d 197, 202 (Pa. 1950) (where no language evidencing intent to create survivorship interest, i.e., no language indicating form of estate, appeared in deeds, deed operated to convey estate of tenancy in common); Estate of Bruce, 538 A.2d 923 (Pa. Super. 1988) (deeds conveying property to grantee and his "wife," where grantee and "wife" were not actually married, did not create joint tenancy with right of survivorship but rather tenancy in common, where deed did not express form of estate and clear expression of intent to include right of survivorship was thus lacking); DeLoatch v. Murphy, 535

- 14 -

A.2d 146, 149 (Pa. Super. 1987) (deed naming plaintiff, who was married to another, and defendant, with whom plaintiff was living at the time, as tenants by the entireties created joint tenancy with right of survivorship).

The trial court made clear that it found Stephens honestly but mistakenly believed that his first marriage to Schwab was invalid, and that the parties intended to convey the property to Stephens and Jacobs as tenants by the entireties. Trial Ct. Op., at 14-15. While the deed was ineffective to create a tenancy by the entireties, see Thornton, it did signify the parties' intent to convey some interest in the property to Jacobs. The trial court enforced the parties' intent by concluding that Jacobs obtained title as a tenant in common.

Stephens contends that the deed is void under our decision in Estate of Sacchetti v. Sacchetti, 128 A.3d 273 (Pa. Super. 2015), but we find Sacchetti distinguishable. There, Mario Sacchetti married Linda Sacchetti unaware that Linda was already married to another man. Mario bequeathed his residence to Linda in his will and executed a deed conveying his residence to himself and Linda. Two years later, Mario died. His executor filed a declaratory judgment action demanding that Linda return the residence to Mario's estate. The Orphans' Court ruled in favor of the estate. This Court affirmed, holding that Linda procured the deed by fraud and

> presented no proof that Mario would have bestowed on her survivorship rights to his property if he had known that she fraudulently induced him to marry her and would not perform her marital obligations. The evidence clearly established that Mario

did not know that [Linda] was married to Mr. Kai when he married her. In addition, [Linda] fraudulently induced Mario into believing that, in return for [the residence] and $25,000, she would provide companionship and cook and clean for him during what was intended to be a marriage of short duration, given Mario's advanced age, heart problems, and diabetes.

Id., 128 A.3d at 287. In contrast to Sacchetti, neither party in this case acted fraudulently. Both parties executed the deed under the honest but mistaken assumption that Stephens' prior marriage was invalid. Since both parties intended for Jacobs to obtain an ownership interest in the property, it would be improper to proclaim the deed void.

Further, we reject Jacobs' argument that Stephens waived his Part 1 argument by failing to file exceptions to the October 16, 2017 order's directive to partition the property. Pa.R.Civ.P. 1557 barred Stephens from filing post-trial motions on this issue. See id. ("No exceptions may be filed to an order directing partition"). Stephens' only recourse was to take a timely appeal, which he did.

Accordingly, we affirm the October 16, 2017 order to the extent it concerns Part 1 of this case, i.e., to the extent it holds that Stephens and Jacobs own the property as tenants in common and directs partition of the property. We vacate the October 16, 2017 order to the extent it disposes of Part 2 issues and quash the parties' appeals to the extent they concern Part 2 issues. We direct the trial court to enter an amended order that recites only

the Part 1 decision. Once the Recorder of Deeds has recorded this amended order, the parties shall retry Part 2 de novo.[2]

Judgment vacated. Appeals quashed to the extent they relate to Part 2 of the partition proceedings. Order of October 16, 2017 affirmed in part and vacated in part. Case remanded for further proceedings in accordance with this opinion. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/8/2019

_____

[2] Although we direct that a Part 2 hearing be conducted de novo, if the parties so choose, nothing herein would prevent them from stipulating into evidence at the de novo hearing evidence and/or testimony already heard by the trial court.