J-A02019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GINA K. JACOBS, FORMERLY GINA K. STEPHENS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 889 WDA 2020 |
| TIMOTHY L. STEPHENS | : | |

Appeal from the Order Entered July 24, 2020
In the Court of Common Pleas of Venango County Civil Division at No(s):
872-2015

| | | |
|---|---|---|
| GINA K. JACOBS, FORMERLY GINA K. STEPHENS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY L. STEPHENS | : | |
| | : | No. 293 WDA 2021 |
| Appellant | : | |

Appeal from the Order Entered July 24, 2020
In the Court of Common Pleas of Venango County Civil Division at No(s):
872-2015

BEFORE:   OLSON, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: JANUARY 31, 2022**

Gina Jacobs (Jacobs) and Timothy L. Stephens (Stephens) cross-appeal

from the order denying their post-trial motions and making final the trial

---

[*] Retired Senior Judge assigned to the Superior Court.

court's judgment entered from a non-jury trial regarding land partition issues.[1]

We affirm.

## Background

The history of this case begins with Stephens' prior marriage to an individual named Kim Schwab. In January 2001, Stephens and Schwab held a wedding ceremony in Jamaica. At the time of their wedding, Stephens believed that their marriage was legal. Later that year, Stephens purchased a residential property at 174 Carey Lane in Cranberry Township. Stephens paid for the property entirely with his own money, and the deed did not list Schwab as an owner due to her poor credit. Stephens and Schwab separated in 2002, and there were no divorce proceedings. In 2005, Schwab married another man.

Stephens and Jacobs met in July 2009, and they married on September 11, 2009. Before they married, Stephens told Jacobs that he previously had a wedding ceremony in Jamaica, but he had consulted an attorney and did not believe that the Jamaican marriage was valid.

On September 19, 2009, Stephens and Jacobs executed a deed conveying the property at 174 Carey Lane from themselves, as "husband and wife," to themselves as "tenants by the entireties." On August 6, 2013, Stephens and Jacobs separated. On February 7, 2014, the trial court annulled their marriage, finding that Stephens' Jamaican marriage to Schwab was valid and that Stephens had failed to divorce Schwab.

_____

[1] The parties' notices of appeal purport to appeal from the trial court's July 24, 2020, order denying post-trial motions. However, "an appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions." **Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*). On October 26, 2020, this Court issued a Rule to Show Cause directing Jacobs to praecipe the trial court Prothonotary to enter judgment in this matter; Jacobs complied with our order on October 30, 2020. Accordingly, we consider the appeal as taken from the entry of judgment. **See id.** at 514-15 (stating appellate courts may "regard as done that which ought to have been done").

On July 17, 2015, Jacobs filed a complaint seeking partition of the Carey Lane property and an award of reasonable rental value of the property from the date of separation onward. Stephens filed a counterclaim seeking reimbursement for various expenditures on the property, including repairs for the garage and kitchen, payments on a roof loan, and payment of real estate taxes and homeowner's insurance premiums.

On October 16, 2017, following a non-jury trial, the trial court entered an order finding that the parties held the property as tenants in common. The court directed partition of the property. Further, the court determined that Stephens had been in sole possession of the property since the date of separation, the value of the property was $145,000.00, and the value of each party's share was fifty percent of the total value, or $72,500.00. The court credited Stephens with $44,773.77 in payments for repairs to the premises, real estate taxes, and homeowners' insurance premiums. After subtracting this credit from Jacobs' one-half share of the value of the premises, the court entered an order in Jacobs' favor in the amount of $27,726.23.

On October 19, 2017, Jacobs filed post-trial motions. Stephens did not file post-trial motions. On October 30, 2017, Stephens filed a motion to strike or dismiss Jacobs' post-trial motions on the ground that Pa.R.Civ.P. 1557 did not permit exceptions to an order directing partition. On November 1, 2017, the trial court dismissed Jacobs' post-trial motions on the ground that she "[could] not file a motion for post-trial relief in response to an order directing partition." Order, 11/1/17, at 1.

*Jacobs v. Stephens*, 204 A.3d 402, 404-05 (Pa. Super. 2019). Jacobs appealed and Stephens cross-appealed.

In that appeal, Jacobs raised four questions:

1. Did the trial court err in giving [Stephens] credit for the payment of real estate taxes in the sum of $8,352.39 and credit for the payment of homeowners' insurance premiums in the amount of $3,779.48?

2. Did the trial court err as a matter of law or abuse its discretion in failing and/or refusing to award [Jacobs] for her fair and

- 3 -

reasonable rental value claim, in the amount of $325.00 per month, plus utilities from August 6, 2013 through October 16, 2017 and monthly thereafter, when the evidence was clear and uncontroverted that [Jacobs] was not in possession of the premises and [Stephens] enjoyed exclusive possession of the subject premises at all times relevant to the claim?

3. Did the trial court err in its November 1, 2017 [order] in granting [Stephens'] motion to strike/dismiss [Jacobs'] motion for post-trial relief without conducting a hearing on [Jacobs'] motion?

4. Did [Stephens'] failure to file a post-trial motion for relief constitute a waiver of all of the issues in his cross-appeal?

*Id*. at 405. Stephens raised three issues in his cross-appeal:

1. Given that the sole reason for the transfer of the subject property from [ ] Stephens to [ ] Stephens and [ ] Jacobs was the erroneous belief that the [p]arties were legally married, did the trial court err when it failed to find said transfer was void under the law of restitution and unjust enrichment, conditional gift, [or] gift made in reliance on a relation?

2. Did the trial court err when it failed to credit [ ] Stephens, as an offset to partition, the amount expended by him for the initial purchase price of the subject property?

3. Did the trial court err when it failed to credit [ ] Stephens, as an offset to partition, the value of the labor expended by him for the necessary repairs, maintenance and preservation of the subject property?

*Id*. at 405-06.

This Court affirmed the portion of the order finding that the parties owned the property as tenants in common and directing partition of the property in equal shares. However, relying on our recent decision in *Kapcsos v. Benshoff*, 194 A.3d 139 (Pa. Super. 2018) (*en banc*), we vacated the order

- 4 -

in all other respects because the trial court lacked jurisdiction to decide those issues.

In ***Kapcsos***, this Court mandated that partition actions be divided into two distinct parts, each with its own appealable order.

> The first order, under Pa.R.Civ.P. 1557, directs partition of the parties' legal interests into severalty ...
>
> The second order, under Pa.R.Civ.P. 1570, does one of three things. A Rule 1570 order may (1) divide the partitioned property among the parties, (2) force one or more of the parties to sell their interest in the land to one or more of the parties, or (3) sell the land to the general public and distribute the proceeds among the parties.
>
> In Part 1, the court must determine whether the property is partitionable under law. In other words, Part 1 is to ascertain:
>
> > I. Do the parties jointly own the real estate in question?
> >
> > II. If so, what fractional legal interests in the property does each party hold?
>
> . . .
>
> After a Part 1 order of partition becomes final (either because no one appeals or an appellate court affirms it), only then may parties proceed to Part 2, where the actual division, award, or sale of the partitioned property occurs ....
>
> Therefore, the entry and recording of a Part 1 order directing partition is essential to terminate a joint tenancy. Following that, Part 2 is purely an equitable proceeding where the trial judge or master balances the equities to decide what form the partitioning will take. If the property were a pie, the trial court must decide how best to serve it to the parties.

***Id.*** at 141-43.

- 5 -

Constrained by **Kapcsos**, this Court concluded the trial court erred combining Part I and Part II rulings into a single order. **Jacobs**, 204 A.3d at 409. Accordingly, we affirmed the order insomuch as it determined the parties owned the property as tenants in common and directing partition of the property in equal shares. **Id**. at 411. However, we vacated the portion of the order with respect to the precise division of the property and directed the trial court to retry the Part II issues *de novo*. **Id**.

### Procedural History After Remand

On remand, Stephens filed a motion for status conference, which the trial court held on December 3, 2019. Following the conference, the parties stipulated the *de novo* proceeding would be conducted on the transcript of the prior proceeding without further testimony or evidence. On December 10, 2019, the trial court entered a final order with respect to Part I of the partition and the parties jointly filed a waiver of appeal rights.

On April 17, 2020, the trial court issued an order and opinion addressing Part II of the partition. The trial court found:

(1) [Stephens] has been in sole actual physical possession of the property since the parties separated on August 6, 2013. [Stephens] has paid all costs associated with the acquisition, care, and maintenance of the property since he purchased it on February 28, 2001. [Jacobs] made no financial contributions to the property whatsoever.

(2) The purchase price paid by [Stephens] for the property on February 28, 2001 was $140,000,00, as set forth on the deed issued on that date.

(3)     [Stephens] has made the following necessary expenditures
        to preserve and maintain the property:

    a. Garage repair materials: $14,822.31
    b. Kitchen repair materials: $8,400.00
    c. Roof repair materials: $8,019.52
    d. Barn repair materials: $1,400.00
    e. Real estate taxes: $8,352.39
    f. Homeowner's insurance: $3,779.48

(4)     The fair market rental value of the property is $650.00 per
        month.

We allocate the credits between the parties as follows:

(1)     [Stephens] is entitled to a credit for his payment of the full
        purchase price of the property, reduced by one-half to
        reconcile this amount with [Stephens'] one-half interest in
        the property. The total credit to which [Stephens] is entitled
        for payment of the purchase price is $70,000.

(2)     [Stephens] is entitled to credits for materials purchased to
        preserve and maintain the property, reduced by one-half to
        reconcile this amount with [Stephens'] one-half interest in
        the property. [Stephens] is also entitled to a credit of one-
        half of the amount of the insurance payments. However,
        the Superior Court's holding in **Bednar** precludes a credit
        for the payment of property taxes. The total credit to which
        [Stephens] is entitled for these expenditures is
        $18,210.69.[FN] 6

        [FN] 6 The Court calculated this as follows: $14,822.37
        ÷ 2 = $7,411.19; $8,400.00 ÷ 2 = $4,200.00;
        $8,019.52 ÷ 2 = $4,009.76; $1,400.00 ÷ 2 =
        $700.00; $3,779.48 ÷ 2 = $1,889.74.

        The sum of these totals is as follows: $7,411.19 +
        $4,200.00 + $4,009.76 + $700.00 + $1,889.74 =
        $18,210.69.

(3)     [Jacobs] is entitled to a credit in the amount of one-half of
        the fair rental value for the time period commencing with
        the parties' separation and her departure from the property
        on August 6, 2013 and concluding on October 16, 2017. For

this period of 50 months and 10 days, [Jacobs] is entitled to a credit in the amount of $16,356.85.

As discussed above, [Stephens] will retain possession and sole title to the property and he will pay [Jacobs] an amount equal to the value of her one-half share of the property, adjusted by the credits awarded to each party. The calculation of [Stephens'] payment to [Jacobs] for her share is as follows: $88,856.85 (the value of [Jacobs'] one-half share plus her credit for the fair rental value) - $88,210.69 (the value of [Stephens'] credits for the acquisition and necessary maintenance costs) = $646.16.

Trial Court Opinion, 4/17/20, at 7-9 (some footnotes and citations omitted).

On April 27, 2020, Jacobs filed a timely motion for post-trial relief and Stephens filed his post-trial motion on May 13, 2020, which the court treated as timely filed.[2] On July 24, 2020, the trial court denied both motions. Jacobs timely appealed and Stephens cross-appealed.[3]

**Issues**

On appeal, Jacobs raises three issues:

1. Did the Trial Court err in granting [Stephens] credits totaling $18,120.69 as credits for materials purchased to repair the garage, the kitchen, roof, and barn?

2. Did the Trial Court err in granting [Stephens] the entire value of [Jacobs'] one-half share, to-wit, the sum of $72,500.00?

3. Did the Trial Court fail to award [Jacobs] a monthly fair rental value claim of $325.00 per month for the entire time frame

---

[2] Jacobs failed to properly serve Stephens with her motion for post-trial relief. Stephens first received actual notice of the motion during a conversation with Jacobs' counsel on May 6, 2020.

[3] Jacobs, Stephens, and the trial court complied with Pa.R.A.P. 1925.

> from the date of the Trial Court decision, August 6, 2013 through August 17, 2020, a period of 80 months and 10 days?

Jacobs' Brief at x.

In his cross-appeal, Stephens raises one issue for our review:

1. Did the Trial Court err when it failed to award credit to [Stephens] for real estate taxes paid by him, pursuant to Pa.R.C.P. 1570(a)(5)?

Stephens' Brief at 40.

## **Jacobs' Claims**[4]

Preliminarily, we note "[t]he purpose of partition is to afford those individuals who no longer wish to be owners the opportunity to divest themselves for a fair consideration." ***Beall v. Hare***, 174 A.2d 847, 849 (Pa. 1961). An action seeking partition of property is an equitable proceeding. ***Appeal of Kelsey***, 5 A. 447, 449 (Pa. 1886), ***aff'd sub. nom. Church v. Kelsey***, 136 U.S. 633 (1890). When considering such a decision, our review is guided by the following:

> [T]he scope of appellate review of a decree in equity is particularly limited, and ... the findings of the [trial court] will not be reversed unless it appears that the [court] clearly committed an abuse of discretion or an error of law. Where credibility of witnesses is important to a determination, the findings of the [trial court] are entitled to particular weight because the [court] has the opportunity to observe their demeanor.
>
> We can review freely conclusions of law or factual determinations that merely are derived from facts supported by the evidence.

---

[4] In the argument section of her brief, Jacobs reordered her issues on appeal. For consistency, we will address Jacobs' issues as they were presented in her statement of questions presented.

Thus, we are limited to a determination of whether there was an error of law, and the trial court's conclusions will not be disturbed unless they are not supported by the evidence or unless the court clearly abused its discretion.

***Marchetti v. Karpowich***, 667 A.2d 724, 726 (Pa. Super. 1995) (citations omitted).

In her first claim, Jacobs contends the trial court erred when it awarded owelty to Stephens for repairs he made to the property during his time of exclusive possession. Jacobs' Brief at 4. Specifically, Jacobs asserts Stephens failed to establish the repairs "[m]aterially enhance[d] the value of the common property." ***Id.*** at 2. In support, Jacobs notes Stephens purchased the property for $140,000 in 2001 and it had an appraised value of $145,000 in 2017. Jacobs thus contends it "defies logic" to conclude $36,421.31 in repairs only resulted in a $5,000 appreciation value. ***Id.*** at 2-3.

This Court has explained:

"As a general rule, where a cotenant places improvements on the common property, equity will take this fact into consideration on partition and will in some way compensate him for such improvements, provided they are made in good faith and are of a necessary and substantial nature, materially enhancing the value of the common property." 68 C.J.S. Partition, § 139(a), ***see also Weiskircher v. Connelly***, 248 Pa. 327, 93 A. 1068 (1915) (contribution allowed in partition action where "it was necessary to remodel, improve and alter the building erected upon the land so conveyed to [the parties]."); and ***Appeal of Kelsey***, 113 Pa. 119, 125, 5 A. 447, 449 (1886) ("[A] tenant in common is liable to his co-tenant for repairs **absolutely necessary**[.]) (emphasis added).

***Bednar v. Bednar***, 688 A.2d 1200, 1205 (Pa. Super. 1997).

- 10 -

In **Bednar**, this Court affirmed the ruling of the trial court, which declined to give co-tenants credit for certain improvements they made to the residence. **See id.** at 1204-06. We concluded the claim failed for several reasons: (1) the co-tenants' counterclaim did not include a demand for improvements; (2) the co-tenants failed to prove the improvements were made within the statute of limitations; and (3) the co-tenants "failed to provide any evidence concerning the degree to which the improvements enhanced the property value." **Id.**

Conversely, in the present case, the trial court, sitting as fact finder, determined Stephens was entitled to credit for certain improvements he made, which "were necessary to preserve the property," including repairs to the garage, kitchen and barn, and a new roof. Trial Court Opinion, 10/30/20, at 15. The trial court's finding is supported by the record. Stephens testified regarding the necessity of these repairs and provided detailed documentation of the costs. **See generally** N.T., 12/13/16, at 50-91, 96-127. We detect no abuse of discretion on the part of the trial court in crediting Stephens' testimony, and finding these repairs were made in good faith, and were necessary to preserve the value of the property.[5] **See Bednar**, 688 A.2d at 1205.

---

[5] In fact, the record reflects that Stephens also requested credit for lawn maintenance, chimney cleaning, pest control, and snow removal, but the trial court declined his request. **See generally** Trial Court Opinion, 10/30/20, at 15 n.19.

In her second issue, Jacobs argues the trial court erred in crediting Stephens "for his payment of the full purchase price of the property, reduced by one-half to reconcile this amount with Stephens' one-half interest in the property." Jacobs' Brief at 10 (quoting Trial Court Opinion, 4/17/20, at 11). Jacobs contends a "property must be partitioned between the parties without regard to their respective contributions towards its acquisition." Jacobs' Brief at 16. She suggests any contribution made by Stephens for the purchase of the property was a "gift" given without expectation of future compensation. *Id*. at 14-16.

This claim is waived because Jacobs failed to preserve the issue in her post-trial motion. It is well-established that Pa.R.C.P. 227.1 "requires parties to file post-trial motions in order to preserve issues for appeal," and "[i]f an issue has not been raised in a post-trial motion, it is waived for appeal purposes." *Board of Supervisors of Willistown Twp. v. Main Line Gardens, Inc.*, 155 A.3d 39, 44 (Pa. 2017) (quoting *Lane Enterprises, Inc. v. L.B. Foster Co.*, 710 A.2d 54 (Pa. 1998)).

> Rule 227.1(b)(2) provides that the grounds for post-trial relief must be "specified in the motion," and that any grounds not so specified are deemed waived unless leave is subsequently granted upon cause shown to specify additional grounds. Pa.R.C.P. 227.1(b)(2). The Explanatory Comment to Rule 227.1(b)(2) makes clear that specification of the grounds for relief requires more than mere "boilerplate" language, and that the motion must instead provide the theories in support "so that the lower court will know what it is being asked to decide." Pa.R.C.P. 227.1(b)(2) (Explanatory Comment–1983) (quoting *Frank v. Peckich*, 257 Pa. Super. 561, 391 A.2d 624, 632–33 (1978)).

***Main Line Gardens, Inc.***, 155 A.3d at 44.

In this case, our careful review of the record reveals that Jacobs made no attempt to preserve this claim in her post-trial motion. ***See*** Jacobs' Motion for Post-Trial Relief, 4/27/20, at 4-7. Rather, she raised this issue for the first time in her statement of matters complained of on appeal. Accordingly, this claim is waived.[6] ***See*** Pa.R.C.P. 227.1(b)(1)-(2).

In her final issue, Jacobs asserts the trial court erred in limiting its award of fair market rental value from the date of the parties' separation (August 6, 2013) through the date of the trial court's initial partition order (October 16, 2017). Jacobs' Brief at 4. Notably, Jacobs does not dispute the monthly rental value assigned by the trial court. Rather, she contends the trial court should have awarded fair market rental value of the property through the date of the trial court's Part II order (April 17, 2020), which the trial court entered following remand from this Court. Jacobs argues she is entitled credit for this additional period of 30 months and 1 day because, beyond the parties' stipulation that the trial court should rely on the prior record in making its Part

---

[6] In the absence of waiver, Jacobs' claim lacks merit. Upon partition, a tenant in common is entitled to a credit for half of their share of the costs paid to acquire the subject property. ***See Weiskircher v. Connelly***, 93 A. 1068 (Pa. 1915) (awarding a co-tenant in a partition action credit for "one-half of the aggregate sum … paid by said [co-tenant] on account of the purchase of the property, costs, and interest"); ***see also Thierry v. Yamulla***, 523 EDA 2021, at 10 (Pa. Super. Jan. 14, 2021) (unpublished memorandum) ("The court calculates owelty based on the equities of what each person invested in the subject real property.").

II decision, "there is no evidence explicit, or implicit that [she] agreed to forego her stated claim for the rental value limited to the date of the vacated Part 2 Order." *Id*. at 8.

Conversely, Stephens asserts:

[Jacobs] has submitted no legal authority for her proposition that credit should have been given [to] her for the time-period between the trial . . . through her first Appeal to Superior Court, through the subsequent remanding of the case on February 8, 2019, through the period of time in which no activity occurred on the docket, through the Status Conference held on December 3, 2019, through the entering of the Lower Court's Part 2 Order on April 17, 2020.

Stephens' Brief at 34. Stephens emphasizes that Jacobs, the moving party, allowed the case to languish for over eight months following remand from this Court[7] but now seeks the fair market rental value for this period of time. *Id*. at 34-35. Moreover, Stephens notes that at the status conference, Jacobs "entered into an agreement to **not** pursue a *de novo* hearing, but instead stipulated that the case would be decided on the evidence" previously admitted. *Id*. at 35 (emphasis in original). Stephens argues Jacobs is bound by her prior agreement and cannot now seek credit for additional time. *Id*.

Pursuant to 68 P.S. § 101, a co-tenant not in possession is granted a cause of action against a co-tenant in possession to recover "his or their proportionate part of the rental value of said real estate for the time such real

---

[7] Stephens eventually petitioned the trial court for a status conference after Jacobs delayed in acting.

estate shall have been in possession" of the co-tenant.   68 P.S. § 101.

Accordingly,

> [t]wo requirements must be satisfied before recovery of the fair rental value of the premises will be permitted: (1) the complaining party must show he is not in possession of the premises; and (2) it must be shown that the remaining tenant in common occupies exclusive possession of the premises.

***Sciotto v. Sciotto***, 288 A.2d 822, 823–24 (Pa. 1972).

In denying Jacobs additional credit for the fair market rental value of the property, the trial court reasoned:

> As discussed above, at the December 3, 2019 status conference following remand from the first appeal, the parties stipulated that the *de novo* proceeding would be conducted on the record of the prior proceedings.   Put differently, the Court would confine its analysis to the record as it existed at the time of the prior order, which was entered October 16, 2017.   [Jacobs] would have the Court depart from that solely to adjust the end-date for calculation of [Jacobs'] rental value credit.
>
> Pursuant to the parties' joint stipulation, the Court disregarded any material offered by either party relating to events after the October 16, 2017 order, which included, among other things, evidence of additional expenses incurred by [Stephens].   Part 2 partition proceedings are, as the Superior Court articulated in ***Kapcsos***, "purely an equitable proceeding where the trial judge or master balances the equities" to reach an equitable result given the circumstances.   194 A.3d at 142-43.   To allow [Jacobs] the benefit of a credit for an additional 30 months and 1 day worth of rental value – which would result in an increase of $9,653.84, totaling $26,010.69 – while simultaneously denying [Stephens] the opportunity to introduce further evidence or make any argument with regard to the same would be patently inequitable. Furthermore, in order to achieve equity, the Court included in its calculation periods when the evidence indicated that the property's state of relative disrepair could have rendered it unrentable altogether.

Trial Court Opinion, 10/30/20, at 16-17 (footnote and emphasis omitted).

We agree with the sound reasoning of the trial court. At the December 3, 2019, status conference hearing, Jacobs represented that she saw "no reason to have another hearing[,]" and wished for the court to issue its Part II order based on the transcript (and evidence presented) from the prior hearing. N.T., 12/3/19, at 3. Based on the stipulation, the parties presented no evidence regarding the fair market rental value of the property from October 16, 2017 through April 17, 2020. Consequently, there is no record support for an award of fair market value during that time period. *See Capuano v. Capuano*, 823 A.2d 995, 1003 (Pa. Super. 2003) (holding "in a hearing *de novo*, the complainant has the initial burden of going forward with the evidence, as he must prove his case as if for the first time"). Accordingly, because the trial court's findings are supported by the record, Jacobs' final claim fails.

## Stephens' Claims

In his cross-appeal, Stephens argues "he be given credit for real estate taxes paid by him in the amount of $4,176.19, which represents one-half of the taxes paid by him to preserve the property." Stephens' Brief at 46. Stephens acknowledges *Bednar* is dispositive of his claim, but nonetheless asks this Court to revisit its holding in *Bednar* decision. *Id*.

In *Bednar*, this Court initially explained, "[t]o entitle one to contribution [for amounts paid toward real estate taxes], the payment must be compulsory in the sense that the party paying was under legal obligation to pay." *Bednar*,

688 A.2d at 1203 (citation omitted). The appellants claimed the proportionate real estate tax obligations that they had paid on behalf of their fellow joint tenant constituted a legal obligation, in that the parties were required under the mortgage to pay the full amount of real estate taxes on the property. *Id*. at 1203–04. This Court disagreed, determining the mortgage did not constitute a legal obligation to pay real estate taxes. *Id*. at 1204. The Court went on to hold that "a cotenant who assumes the tax obligations of his fellow tenant does so as a volunteer. [S]uch a volunteer is not entitled to contribution." *Id*. (citing 72 P.S. § 5511.12 (provision of Pennsylvania's Local Tax Collection Law providing that a joint tenant is only responsible for his or her proportionate share of real estate taxes due on a property)).

Upon review, we conclude *Bednar* is on point and controlling, and the trial court properly applied it to this case. In both *Bednar* and the instant case, the parties claiming contribution for paying the proportionate real estate tax obligations of their fellow joint tenant were under no legal obligation to do so, and were thus not entitled to contribution for those payments. *See Bednar*, 688 A.2d at 1204. Further, we have long held that "as long as [a] decision has not been overturned by our Supreme Court, a decision by our Court remains binding precedent." *Marks v. Nationwide Ins.*, 762 A.2d 1098, 1101 (Pa. Super. 2000); *see also Commonwealth v. Beck*, 78 A.3d 656, 659 (Pa. Super. 2013) (acknowledging that a three-judge panel of the Superior Court "is not empowered to overrule another panel of the Superior

Court" where the facts of the two cases are indistinguishable).  Thus, even assuming *arguendo* we were inclined to agree with Stephens' position, we nevertheless must affirm the order on the basis of **Bednar, supra**.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/2022