J-A26003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BARBARA S. HASSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| GEORGE G. GREGG | : | No. 1145 WDA 2023 |

Appeal from the Judgment Entered November 13, 2023
In the Court of Common Pleas of Lawrence County Civil Division at
No(s): 2018-10351

| | | |
|---|---|---|
| BARBARA S. HASSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| GEORGE G. GREGG | : | No. 1146 WDA 2023 |

Appeal from the Judgment Entered November 13, 2023
In the Court of Common Pleas of Lawrence County Civil Division at
No(s): 2017-11242

BEFORE:  BOWES, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED: January 31, 2025**

Barbara S. Hasson appeals from the judgments purporting to distribute the proceeds of the sale of real property in New Castle, Pennsylvania, in the partition action filed by George G. Gregg against Hasson, Hasson's counterclaims thereto, and Hasson's consolidated civil suit against Gregg. Since our review of the record reveals that the property at issue was never legally partitioned, we are compelled to quash.

The trial court provided the following background:

Gregg and Hasson owned as tenants in common certain real estate . . . at 208 3rd Street, Seventh Ward, City of New Castle, Pennsylvania.[1]  The real estate consisted of a lot and structure which was deeded to Gregg and Hasson [on] May 30, 2002, from Mary E. Gregg (hereinafter "Mrs. Gregg"), the mother of the parties.  Mrs. Gregg was a widow at the time of the deed, her husband, George D. Gregg, the father of the parties, having passed away in 1997.

Mrs. Gregg lived at 208 3rd Street, after deeding it to her children, until 2007.  She then frequented the property from 2007 until shortly before her passing on November 28, 2017, but resided with Hasson.  From the time the real estate was deeded in 2002 until her passing in 2017, all bills and expenses of 208 3rd Street were paid for with funds from Mrs. Gregg.

Hasson was an 81% majority shareholder in a company known as East Coast Asphalt Paving and Sealcoating (hereinafter "East Coast Paving") from its inception in 2005 until 2017.  East Coast Paving used 208 3rd Street as its official business address from 2005 to 2017.  East Coast Paving never paid rent to Gregg or Hasson as owners of 208 3rd Street.

Hasson's son, Barry Miles, also resided at 208 3rd Street for a period of time, and in 2017, became the majority shareholder in East Coast Paving.  Miles used 208 3rd Street as the mailing address for East Coast Paving.

In 2007, East Coast Paving did sewer repairs on the property at 208 3rd Street, at the cost of $34,781.34, which sewer repairs were paid pursuant to a mortgage on the subject property in the name of Barbara Hasson and "Gregg Geo".

---

[1] "[A] tenancy in common is an estate in which there is unity of possession but separate and distinct titles." **In re Est. of Quick**, 905 A.2d 471, 474 (Pa. 2006) (cleaned up).  A tenancy in common has no right of survivorship; rather, "when one co-tenant dies, his interest descends or passes by will to his heirs or devisees; the remaining co-tenants acquire no additional interest in such an estate." **Edel v. Edel**, 424 A.2d 946, 948 (Pa.Super. 1981) (citations omitted).

East Coast Paving has also made a claim for sewer repairs to the property in July [of] 2017, in the sum of $41,280.00.

East Coast Paving allegedly performed driveway repairs on property owned by Gregg at 725 Maitland Lane, Neshannock Township, New Castle, Pennsylvania, in the sum of $84,990.00. East Coast Paving was never paid for this paving work. Hasson alleges that the understanding was th[at] Gregg would convey to her his one-half interest in the property at 208 3rd Street, New Castle, in return for the driveway repairs . . . .

Gregg sold the property at 725 Maitland Lane, New Castle, Pennsylvania in 2019, without making any type of payment for the driveway repairs to East Coast Paving.

Trial Court Opinion, 5/18/23, at 3-5 (unnecessary hyphenation omitted).

Gregg commenced the underlying litigation by filing a complaint in equity against Hasson in December 2017. He asserted that (1) East Coast Paving used Mrs. Gregg's property without paying rent, (2) he was not consulted regarding the 2007 mortgage, and (3) the invoice for the installation of a driveway at his residence was not related to the subject property. Hasson submitted an answer, new matter, and counterclaim regarding certain expenditures she made to maintain the property. She also filed her own civil suit against Gregg for breach of contract based on the driveway installation.

Upon motion and consent of the parties, the trial court consolidated the equity and civil actions for trial. On June 2, 2022, the court entered a consent decree to sell the property at 208 3rd Street. The proceeds from the sale, namely $23,179.08, were placed in escrow pending resolution of the underlying suits. The court did not, however, designate the parties' respective legal interests when ordering the sale. At a bench trial held on September 6

and December 19, 2022, the court heard testimony from Gregg, Miles, Hasson, and Anthony Carbone, a contractor who provided a quote to Miles regarding proposed driveway work at Gregg's residence.

After review, the court ordered distribution of $15,037.11 of the proceeds to Hasson and $8,141.97 to Gregg. It apportioned the payoff of the 2007 mortgage equally between the parties because "Gregg had record notice of the recording of the mortgage" and both parties "received the benefit of the mortgage payoff, in that the mortgage proceeds were used to pay for sewer repairs to the property[.]" *Id*. at 11. The court further held that because the 2007 sewer repairs were "paid by the mortgage on the property, [it] w[ould] not grant Hasson any further claim in that regard." *Id*. at 12. As for the 2017 sewer repairs, the court denied Hasson credit for those costs because it found Miles's testimony regarding those repairs to be "incredible and completely lacking in foundation[.]" *Id*. Finally, it denied any credit to Hasson for the driveway work because (1) the testimony of Miles was incredible, (2) Miles did not obtain Gregg's approval for the work or the costs, and (3) the residence in question was "not the property subject to the partition action[.]" *Id*. at 13.

Gregg filed a motion for reconsideration regarding the 2007 mortgage payoff. Hasson submitted a response, imploring the court to let the initial figures stand or, in the alternative, credit her for one-half of the costs of the 2007 sewer repairs. Following oral argument, the court determined that Gregg did not co-sign the 2007 mortgage with Hasson and lacked record notice of it. Indeed, the court found that the evidence established that Miles,

Hasson's son, "had his grandmother, [Mrs.] Gregg, sign the mortgage document as 'Gregg Geo'." Order, 8/23/23, at 1. Since the initial distribution "made Gregg responsible for one-half of the repayment of the loan that he didn't execute and was not aware of until the litigation was instituted[,]" the court recalculated the division of the net escrow funds as follows: $4,290.57 to Hasson and $18,888.55 to Gregg. *Id*. at 2. The court did not credit Hasson for the sewer repairs.

Hasson filed a motion for reconsideration of the revised distribution. She maintained that the court's initial apportionment was correct, and that it erred insofar as it applied the entire mortgage payoff against her while also denying her credit for the 2007 sewer repairs. **See** Motion for Reconsideration, 9/5/23, at ¶¶ 14-20. The trial court did not rule upon this motion before Hasson filed her notices of appeal.[2] Thereafter, the court denied the motion in light of the pending appeals and ordered Hasson to file a Pa.R.A.P. 1925(b) concise statement. Hasson filed her statement late. In lieu of an opinion or statement finding the issues waived, the court referred us to its prior opinions as to its reasoning for how it ruled upon the issues raised. **See** Trial Court Opinion, 10/27/23, at 3.

_____

[2] We consolidated the appeals and issued orders directing Hasson to file *praecipes* with the prothonotary to enter judgment. Hasson complied, judgments were entered, and the matters are now before us. **See McGoldrick v. Murphy**, 228 A.3d 272, 275 n.7 (Pa.Super. 2020) ("Pursuant to Pa.R.A.P. 905(a)(5), this court treats a notice of appeal filed after the announcement of a determination but before entry of an appealable order as filed after entry of the appealable order and on the day thereof.").

- 5 -

Hasson presents six issues for our consideration. However, as noted, we discovered during our review that the property was not partitioned before the sale proceeds were divided. Since this error impacts our jurisdiction, we must resolve it before we can reach the merits of her claims. ***See Kapcsos v. Benshoff***, 194 A.3d 139, 141 (Pa.Super. 2018) (*en banc*) ("Although neither party has challenged our jurisdiction, we may always consider that question on our own motion. We raise the issue of our jurisdiction now, because we have uncovered a procedural error in the record that prevents us from addressing the merits of this appeal." (cleaned up)). We review jurisdictional questions *de novo* and apply a plenary scope of review. ***Id***.

The procedural error at issue in this case is particular to partition actions. As this Court has observed, "partition actions are not very common and, thus, . . . the bench and bar may be unfamiliar with their procedural peculiarities." ***Id***. at 144. To better understand, we reiterate the following explanation regarding the two parts of every partition action:

> Pennsylvania Rules of Civil Procedure 1551 – 1574 split a partition action into two, distinct, chronological parts. Rules 1551 – 1557 govern Part 1, and Rules 1558 – 1574 govern Part 2. Each part, by rule, must produce its own, distinct, appealable order.

> The first order, under Pa.R.Civ.P. 1557, directs partition of the parties' legal interests into severalty.

> The second order, under Pa.R.Civ.P. 1570, does one of three things. A Rule 1570 order may (1) divide the partitioned property among the parties, (2) force one or more of the parties to sell their interest in the land to one or more of the parties, or (3) sell the land to the general public and distribute the proceeds among the parties.

In Part 1, the court must determine whether the property is partitionable under law. In other words, Part 1 is to ascertain:

> I. Do the parties jointly own the real estate in question?
>
> II. If so, what fractional legal interests in the property does each party hold?

The answers to these questions may be admitted in the pleadings, or, if they are not, a hearing or jury trial may be needed. If the trial court answers both questions and finds that the plaintiff has established a right to partition, Rule 1557 dictates:

> the court shall enter an order directing partition which shall set forth the names of all the co-tenants and the nature and extent of their interests in the property. No exceptions may be filed to an order directing partition.

Critically, any party may immediately appeal that order under Pennsylvania Rule of Appellate Procedure 311(a)(7) (permitting some interlocutory appeals as of right). After a Part 1 order of partition becomes final (either because no one appeals or an appellate court affirms it), only then may parties proceed to Part 2, where the actual division, award, or sale of the partitioned property occurs.

*Id*. at 141–42 (some citations omitted).

The Part 2 order amounts to "an equitable proceeding where the trial judge or master balances the equities to decide what form the partitioning will take." *Id*. at 142-43. Stated simply, "[i]f the property w[as] a pie, the trial court must decide how best to serve it to the parties." *Id*. at 143. Just as you cannot simultaneously bake a pie and slice it, a trial court may not combine the Part 1 and Part 2 proceedings; Part 1 must be completed before it can move on to Part 2. *See Jacobs v. Stephens*, 204 A.3d 402, 406-08

(Pa.Super. 2019) (addressing only Part 1 issues on appeal from the trial court's single order purporting to dispose of both Parts 1 and 2).

Presently, the trial court attempted to slice the pie before baking it. That is, the court never entered a Part 1 order directing partition by designating the parties' legal interests in the property. The June 2, 2022 order merely sold the property and placed the proceeds in escrow for division in a Part 2 proceeding. As we explained in **Kapcsos**, this procedural error is fatal to the instant appeal:

> [A] Part 1 order must precede Part 2. In addition, . . . the failure of the parties to secure and record a Part 1 order partitioning the property deprived the trial court of jurisdiction to conduct Part 2. If the property is never partitioned via a Part 1 order, the court has nothing to divvy-up in Part 2, because the parties still own undivided interests in the whole. A Part 1 order must first disentangle their legal interests and extinguish rights of survivorship. Also, recording a Part 1 order is absolutely imperative to protect the various rights of the parties and their heirs.

**Kapcsos**, 194 A.3d at 145 (emphasis omitted).[3]

Since Hasson and Gregg did not secure a Part 1 order to divide their legal interests in the property, Part 1 of the proceedings has not yet been completed. Therefore, the matter must return to the trial court for it to enter a Part 1 order determining the parties' respective shares of the subject

---

[3] Although the **Kapcsos** Court dealt with a partition involving joint tenants with rights of survivorship, this Court subsequently applied the principles of **Kapcsos** to tenants in common, the type of ownership we have here, in **Jacobs v. Stephens**, 204 A.3d 402 (Pa.Super. 2019).

property.[4]   As in **Kapcsos**, "once the trial judge [so] partitions the joint property via a Part 1 order and the Recorder of Deeds has recorded it, the parties must retry Part 2 *de novo*, where both parties may present any evidence of monetary contributions as off-sets toward the owelty."[5]  **Id**.  At this point, however, we may not review the merits of the cases as the judgments appealed from are legal nullities, not final, appealable orders.  **Id**. Therefore, we quash the appeals.

Appeals quashed.

_____

[4] For example, a compliant Part 1 order could look like this:

> Now, *[date of order]*, it is ordered that partition be made of the real estate known as *[name of real estate]*, *[street address of real estate]*, *[name of city]*, *[name of county]*, Pennsylvania, as more specifically described in plaintiff's complaint, among the parties named in the complaint, as follows: to *[names of parties]*, *[respective shares of real estate of parties]*.

23 Standard Pennsylvania Practice 2d § 122:89.

[5] We echo the note provided in **Jacobs** that "if the parties so choose, nothing herein would prevent them from stipulating into evidence at the *de novo* [Part 2] hearing evidence and/or testimony already heard by the trial court." **Jacobs**, 204 A.3d at 411 n.2.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/31/2025